INHABITANTS OF SHUTESBURY *vs.* INHABITANTS OF HADLEY.

Franklin. Sept. 21, 1881. — Sept. 7, 1882. LORD, DEVENS & C. ALLEN, JJ., absent.

In an action by the town of S. against the town of H. for the support of a female pauper, whose settlement through her husband was alleged to be in H., it appeared that the town of A. had previously sued the town of S. for the support of the same pauper; that in that action S. set up in its answer that the pauper's husband had his settlement in H.; that the question of his settlement was the only question in issue in that action; that, on filing the answer, H. was requested by A. to assume the prosecution of the action, and did so, and that A. obtained a judgment, which was satisfied by S. *Held,* that these facts did not estop S. from raising the question of the husband's settlement in the present action.

In an action by one town against another for the support of a female pauper, the main issue was whether the pauper's husband, who was an alien, and was assessed and paid taxes in the defendant town from 1837 to 1845, and resided there until April 1, 1846, was domiciled there on April 1, 1836. The plaintiff offered in evidence a certified copy from the town clerk's records of another town, purporting to be the copy of a marriage certificate made in April 1837, certifying that the magistrate joined the pauper's husband and a former wife in marriage on May 24, 1836, and describing the husband as of the defendant town. The plaintiff also introduced evidence that the husband had lived in the defendant town several months before his first marriage, but the witnesses were unable to fix the date of that marriage. The defendant admitted that the husband was married to his first wife on the day named in the certificate; but objected to the admissibility of the certificate to show that at that time the husband was a resident of the defendant town. But the judge admitted it as *prima facie* evidence that the husband's residence was in the defendant town on the day named, but not of his residence there before that date. *Held*, that the defendant had no ground of exception.

In an action against the town of H. for aid furnished a female pauper in 1878 and 1879, it appeared that the husband of the pauper, an alien, being of age, lived in H. ten years from 1836 to 1846, and paid taxes there for five years during that time; and died in 1872, never having been naturalized. *Held*, that, under the Gen. Sts. *c.* 69, § 1, *cl.* 12, and the St. of 1868, *c.* 328, as amended by the St. of 1871, *c.* 379, the husband of the pauper gained a settlement in H., and that the pauper gained a derivative settlement from him.

CONTRACT for support furnished from June 1, 1878, to July 5, 1879, to Sarah Beals, whose settlement, through her husband, John Beals, was alleged to be in the defendant town. Trial in the Superior Court, before *Colburn*, J., who allowed a bill of exceptions, in substance as follows:

It was agreed that John Beals was an alien and was never naturalized; that he was assessed and paid taxes in Hadley from 1837 to 1845, inclusive; and that he resided in Hadley until April 1, 1846, when he removed to Whately. It was also agreed that he was of age on April 1, 1836, or before. The main issue in the trial was whether John Beals was domiciled in Hadley on April 1, 1836, so as to give him a settlement there by a ten years' residence and five years' payment of taxes.

It appeared that in 1878 the town of Athol sued the town of Shutesbury for support furnished to Sarah Beals; that in that action Shutesbury set up in its answer that John Beals had his settlement in Hadley; that the question of his settlement was the only question in issue in that action; that, on filing the answer, Hadley was requested by Athol to assume the prosecution of the action, and did so, and employed counsel, and the counsel

so employed conducted the suit, and obtained a judgment for the plaintiff, which was satisfied by Shutesbury.

Upon these facts, the defendant contended, and asked the judge to rule, that the plaintiff was estopped to raise and contest in the present action the question of John Beals's settlement as against the defendant. But the judge ruled that there was no estoppel; and the defendant excepted.

As tending, in connection with other evidence, to show that John Beals had his settlement in Hadley by a ten years' continuous residence there prior to April 1, 1846, the plaintiff offered in evidence a certified copy from the town clerk's records of Deerfield, purporting to be the copy of a marriage certificate made in April 1837, certifying that the magistrate joined John Beals and Mary Ann Horton (a former wife) in marriage on May 24, 1836, and describing John Beals as of "Hadley Upper Mills." One or more of the plaintiff's witnesses had testified that John Beals lived in Hadley several months before his first marriage, but were unable to fix the date of that marriage.

The defendant admitted that John Beals was married to Mary Ann Horton on May 24, 1836, but objected to the admissibility of the record to show any other fact there certified to, especially that John Beals was at the time a resident of "Hadley Upper Mills." But the judge admitted the certificate as *prima facie* evidence of the facts recited, and ruled that it was only *prima facie* evidence of John Beals's residence in Hadley on May 24, 1836, and not of his residence there prior to that date; and so instructed the jury. To the admission of this evidence the defendant excepted. It was admitted that Hadley Upper Mills was a part of Hadley.

The defendant contended that, John Beals being an alien when he died, in 1872, Hadley could not be charged for the support of his widow by virtue of any laws of this Commonwealth on the subject. But the judge ruled that the plaintiff might recover if a ten years' continuous residence of Beals in Hadley, with five years' payment of taxes, was made out; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. Delano*, for the defendant.

*A. De Wolf*, for the plaintiff.

FIELD, J.    The plaintiff contends that Sarah Beals had a settlement in the defendant town, in consequence of a settlement acquired by her husband, John Beals, under the St. of 1793, *c.* 34, § 2, *cl.* 12; the Rev. Sts. *c.* 45, § 1, *cl.* 12; the Gen. Sts. *c.* 69, § 1, *cl.* 12; and the Sts. of 1868, *c.* 328, § 1, and 1871, *c.* 379, § 1.    *Worcester* v. *Springfield*, 127 Mass. 540.    *Endicott* v. *Hopkinton*, 125 Mass. 521.

The judgment in the action of Athol against Shutesbury clearly did not estop Shutesbury from proving in this action against Hadley where the settlement of Sarah Beals in fact was. The town of Hadley was in no sense a party to that action, nor in privity with either of the parties.    It claimed no rights in the action derived from the plaintiff, and was not vouched in by the defendant to defend the action.    It was not responsible over to the town of Shutesbury, either by operation of law or by contract, for the damages obtained in that action.    It prosecuted the suit, apparently, because Shutesbury, in denying the allegation of Athol that John Beals's settlement was in Shutesbury, had also averred that it was in Hadley.    Evidence that it was in Hadley would undoubtedly be competent under this denial, because if it was in Hadley it was not at the same time in Shutesbury, but the issue between Athol and Shutesbury was whether the settlement was or was not in Shutesbury, as alleged, and in the determination of that issue Hadley had no interest, and was a stranger to the action.    *Braintree* v. *Hingham*, 17 Mass. 432.    As evidence tending to show that, on May 24, 1836, John Beals resided in Hadley, the judge admitted a certified copy from the town clerk's records of Deerfield, purporting to be the copy of a marriage certificate made in April 1837, certifying that the magistrate joined John Beals and Mary Ann Horton (a former wife) in marriage on May 24, 1836, and describing John Beals as of Hadley Upper Mills, which was a part of Hadley.    It was incumbent on the plaintiff to prove that John Beals had resided continuously in Hadley from April 1, 1836, to April 1, 1846.    The judge admitted the certificate as *prima facie* evidence that John Beals's residence was in Hadley on May 24, 1836, and not of his residence there

before that date.   Several witnesses testified that John Beals lived in Hadley several months before his first marriage, and the defendant admitted that he was married to Mary Ann Horton on May 24, 1836.   As it was incumbent on the plaintiff to prove a residence "for the space of ten years together," the evidence was not immaterial.

The Revised Statutes, which went into effect from and after the last day of April 1836, provided, by *c.* 75, § 17, that "every justice and minister shall keep a record of all marriages solemnized before him, and in the month of April, annually, shall make a return, to the clerk of the town in which he resides, of a certificate, containing the christian and surnames, and places of residence, of all the persons who have been by him joined in marriage, within the year then last past, and also the time when solemnized," &c., "and all marriages, so certified to the clerk, shall be forthwith recorded by him in a book to be kept for that purpose;" and by § 25, "the record of a marriage, made and kept as before prescribed, by a justice of the peace or minister, or by the clerk of any town, or a copy of any such record duly certified, shall be received in all courts and places, as presumptive evidence of the fact of such marriage."

This last provision was substantially reënacted in the Gen. Sts. *c.* 106, § 21.   But the Gen. Sts. *c.* 21, § 6, provide that "the record of the town clerk relative to any birth, marriage, or death, shall be *prima facie* evidence, in legal proceedings, of the facts recorded.   The certificate signed by the town clerk for the time being shall be admissible as evidence of any such record."

These two independent provisions are in the Public Statutes, Pub. Sts. *c.* 145, § 29; *c.* 32, § 11.   The last of these provisions was enacted for the first time in the Gen. Sts. *c.* 21, relating to "the registry and returns of births, marriages and deaths." The colonial and provincial statutes, and also the early statutes of the Commonwealth on the subject, are cited in *Kennedy* v. *Doyle*, 10 Allen, 161.   After the Revised Statutes, additional statutes were passed relating to the registry and returns of births, marriages and deaths; Sts. 1842, *c.* 95; 1844, *c.* 159; 1849, *c.* 202; 1850, *c.* 121; and in the Gen. Sts. *c.* 21, these provisions were incorporated with other new provisions, among which was § 6; and the facts required by law to be recorded

are definitely specified in the first section of that chapter. The argument is, that *c.* 21, § 6, has no application to this case, because not in existence when this record was made, and that it relates to a system of registration in part established after this marriage was celebrated, and that the section is not retrospective. But, apart from this, the record would be evidence of the facts required by law to be recorded, and these provisions of statute in this respect are but declaratory of the common law. *Kennedy* v. *Doyle, ubi supra. Sumner* v. *Sebec,* 3 Greenl. 223. One of the facts required by the Rev. Sts. *c.* 75, to be recorded, was the "places of residence" of the parties.

The question remains whether an attested copy of the record is evidence of the "places of residence," as the Rev. Sts. *c.* 75, § 25, makes "a copy of any such record duly certified" presumptive evidence of the fact of marriage, but of nothing else. In *Stetson* v. *Gulliver,* 2 Cush. 494, 498, Chief Justice Shaw, in reference to a registry copy of a deed, says, "In this State, we think, it has always been held, that when the book of the register would be evidence, a certified copy is entitled to have the same effect; there being very little ground to apprehend any mistake from that cause, and upon consideration of the great public inconvenience, which would result from having the books of record removed from their proper custody and place of security." This rule of evidence has, we think, been applied to all cases of records required by law to be kept by a public officer. 2 Dane Ab. 296. *Commonwealth* v. *Chase,* 6 Cush. 248. *Chamberlin* v. *Ball,* 15 Gray, 352. *Commonwealth* v. *Norcross,* 9 Mass. 492. *Kennedy* v. *Doyle, ubi supra. Oakes* v. *Hill,* 14 Pick. 442. *Robbins* v. *Townsend,* 20 Pick. 345. *Barnard* v. *Crosby,* 6 Allen, 327.

We are inclined also to the opinion, that the Gen. Sts. *c.* 21, § 6, being but declaratory of the common law of this Commonwealth, was intended to be retrospective, and to apply to all records, whether past or future, of all facts required at the time of the record by law to be recorded relative to any birth, marriage or death. The ruling of the court was therefore correct. The ruling of the court upon the effect of John Beals having been an alien when he died, was correct. *Worcester* v. *Springfield, ubi supra.*                    *Exceptions overruled.*