## COMMONWEALTH vs. JOHN J. CORKERY.

Middlesex.    January 16, 1900. — March 2, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Larceny — Copy of Document from Official Files — " Original " — Form of Attestation — Evidence.*

Under St. 1884, c. 330, § 3, requiring a foreign corporation having a place of business in this Commonwealth to file a copy of its charter with the commissioner of corporations, and Pub. Sts. c. 169, § 70, providing that copies of documents in certain departments of the Commonwealth, duly authenticated by the officer having charge of the same, shall be competent evidence in all cases equally with the originals thereof, if the genuineness of his signature is attested by the Secretary of the Commonwealth under its seal, a copy of the copy of a charter so filed with the commissioner, duly authenticated by him, has the same effect as the document in his hands, which is the " original," within the meaning of the statute, and is admissible in evidence.

Whether the requirement of Pub. Sts. c. 169, § 70, as to the attestation of the genuineness of the signature of a certifying officer by the Secretary of the Commonwealth, is satisfied by an attestation that, at its date, the certifying officer was such officer, " and that to his acts and attestations, as such, full faith and credit are and ought to be given, in and out of court," *quære.*

Evidence that, about three months before stolen milk cans were found in the defendant's possession under suspicious circumstances, he said to a fellow servant that if the latter was short of cans he could go out and steal them, and that if he did not do it there were others that could do it, is admissible at the trial of an indictment for the larceny of the cans.

COMPLAINT, to the Third District Court of Eastern Middlesex, for the larceny of milk cans. At the trial in the Superior Court, on appeal, before *Bond*, J., the jury returned a verdict of guilty ; and the defendant alleged exceptions to the admission of certain evidence, the nature of which appears in the opinion.

*A. J. Daly*, for the defendant.

*F. N. Wier*, District Attorney, for the Commonwealth.

HOLMES, C. J.    This was a complaint for the larceny of milk cans. The third count was for stealing cans of the property of the Boston Dairy Company. The fourth was for stealing cans of the property of H. P. Hood and Sons. At the trial the other elements of the crime were proved, and the government was allowed, subject to exception, to introduce certificates of the commissioner of corporations purporting to be copies of certified copies of the charter of the Boston Dairy Company as a corporation under the laws of Maine, and the charter of H. P. Hood and Sons, as a corporation under the laws of New Hampshire. According to the certificate, copies of these charters were filed with the commissioner by the corporations concerned, in pursuance of St. 1884, c. 330, § 3, and the copies offered were copies of these copies.

The only objection urged is that the copy is not made evidence by § 1 of St. 1884, c. 330, the act concerning foreign corporations having a usual place of business in this Commonwealth. It may be assumed that that section does not extend to this matter. But by § 3 of the same act such corporations are required to file copies of their charters with the commissioner of corporations, and by Pub. Sts. c. 169, § 70, copies of documents in the executive and other departments of the Commonwealth, (or, by St. 1889, c. 387, of any city or town,) duly authenticated by the officer having charge of the same, shall be competent evidence in all cases equally with the originals thereof, if the genuineness of the signature of such officer is attested by the Secretary of the Commonwealth under its seal. The word " originals " means the documents in the hands of the certifying officer, whatever they may be. Taking this last with the requirement that copies of the charters shall be filed with the commissioner, we are of opinion that one purpose of the statutes is to make the copy deposited with the commis-

sioner a new source, so to speak, and primary evidence, (subject, of course, to correction,) for the purposes of this State. The duly authenticated certificate of the commissioner establishes the fact that the document in his hands is what it purports to be, and the copy, although a copy of a copy, has the same effect as the document itself.

We draw the whole conclusion from the statutes, but even if the effect of Pub. Sts. c. 169, § 70, were only to give the copy of the copy the same effect as the first copy bearing the attestation of the Secretary of State for Maine or New Hampshire, with the seal of the State, we should be of opinion that the evidence was admissible. The seal of the State and the signature of the Secretary of State accompanying it are self-proving. 1 Greenl. Ev. §§ 4, 479. That the first copy did bear that attestation and seal is established by the certificate, just as the execution of a deed is proved in a proper case by a certified copy from the registry. *Commonwealth* v. *Richardson*, 142 Mass. 71, 74. *Gragg* v. *Learned*, 109 Mass. 167. *Commonwealth* v. *Emery*, 2 Gray, 80, 81. For all that appears evidence may have been put in that by the statutes of Maine and New Hampshire the certificates of organization are part of the public records of the States granting them, and are kept in the office of the Secretary of State. Maine Rev. Sts. c. 48, § 19, and St. 1893, c. 185, § 1. N. H. Pub. Sts. c. 147, § 4. In the absence of evidence these facts might be presumed as a well known practice, coupled with the certificate of the officials to that effect. A party not supposed to have the original documents is not called upon to produce them from another State where they may be presumed to be, when their effect comes in question in this collateral way. As a copy is evidence, a certificate of the public officer having the record in charge sufficiently verifies the document produced as such. *Tapley* v. *Martin*, 116 Mass. 275, 276. The statutes then come in and give equal effect to the copy of the copy, upon the ground that it is convenient and that there is little reason to fear mistakes. See *Stetson* v. *Gulliver*, 2 Cush. 494, 498, 499; *Shutesbury* v. *Hadley*, 133 Mass. 242, 247; *Whiton* v. *Albany City Ins. Co.* 109 Mass. 24, 30.

A question might have been raised on the form of the attes-

tation by the Secretary of this Commonwealth. The statute requires him to attest· the genuineness of the signature of the attesting officer — in this case the commissioner of corporations. His attestation is to the effect that " at the date of the attestation hereunto annexed," a certain person (the certifying officer) was the commissioner of corporations, etc., " and that to his acts and attestations, as such, full faith and credit are and ought to be given, in and out of court." As the same form is used in both cases and was used in the attestation proved in *Commonwealth* v. *Richardson,* 142 Mass. 71, 73, we may assume that it is the form generally adopted by the Secretary of State. We may infer from that that it is intended to satisfy the statute, and therefore to import that the signature is the genuine signature of the officer, although it does not say so. Whether it would be sufficient on that ground, if attention had been called to it, we need not inquire, as the objection taken was a broader one, to the power of the commissioner of corporations to certify at all. If attention had been called to this purely formal matter, very possibly it might have been corrected. The form is not criticised in *Commonwealth* v. *Richardson.*

A second exception taken was to the admission of a conversation of the defendant in February, 1899, with a fellow servant, one Conlon, to the effect that if Conlon was short of cans he could go out and steal them, and that if Conlon did not do it there were others that could do it. The cans in question were shown to belong to the alleged owners, and were found in the defendant's custody under suspicious circumstances not necessary to be ·detailed. The defendant testified that they were put where they were found about the first of May. Evidence of his animus in February in connection with other circumstances of suspicion was not too remote. Remoteness depends a good deal on the nature of the case. If the remark was found to have been made seriously, it showed that, less than three months before the cans were traced to his possession, the defendant contemplated with complacency the crime with which he was charged. It could not be presumed by the judge that he had experienced a change of heart in the mean time. See *Commonwealth* v. *Quinn,* 150 Mass. 401, 404 ; *Commonwealth* v. *Goodwin,* 14 Gray, 55.          *Exceptions overruled.*