## MICHAEL DERINZA'S (dependent's) CASE.

Suffolk.    November 12, 13, 1917. — February 28, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act,* Alien dependent, Dependency. *Deposition. Evidence,* Proof of foreign marriage, Judicial notice.

Under St. 1915, c. 275, which provides that in a claim under the workmen's compensation act a commission to take the deposition of a witness in a foreign country may issue from the Superior Court upon the written request of the Industrial Accident Board "or of any member thereof, together with interrogatories and cross-interrogatories, if any there be, filed with the clerk of the Superior Court for any county," an oral application by the Industrial Accident Board and the filing of interrogatories by the secretary of the board are not a written · request for a commission within the meaning of the statute.

The words of the statute providing that a commission shall issue "upon the written request of the board or of any member thereof" mean that the application actually must be signed by the board or by some member of the board, and a written request by the secretary of the board cannot be held to be the request required.

*It seems* that if such a commission to take the deposition of a witness in a foreign country is issued through inadvertence when by mistake or oversight no written request has been filed, the defect can be cured by the filing of a written request by the board or some member of it and the allowance of that request by the Superior Court by a *nunc pro tunc* order.

In a claim under the workmen's compensation act the objection by the insurer to the deposition of the alleged dependent of the deceased employee in a foreign country, that before the commission to take the deposition issued no written request had been filed by the Industrial Accident Board or any member thereof, is an objection to the form of the deposition and cannot be taken for the first time when the deposition is offered in evidence at the hearing before the Industrial Accident Board, after the insurer has filed cross-interrogatories and the deposition has been taken in the foreign country and has been used without objection at the hearing before the arbitration committee.

When a commission has issued for taking the deposition in a foreign country of the alleged dependent widow of a deceased injured employee in a claim under the workmen's compensation act, there is no impropriety in the preparation of interrogatories to be propounded to such widow by the clerk of the Industrial Accident Board "in behalf of" the claimant and acting for an arbitration committee which has been formed to hear the case, the clerk stating that the alleged widow lives in a foreign land and is "without counsel in these proceedings," and there being nothing in the interrogatories propounded to indicate a partizan attitude of mind.

In regard to the same deposition it was *held* that there was nothing in an objection to the admission of the deposition on the ground that it did not appear that the deponent could be punished for perjury in the place where it was taken, the

commission being in the usual form and directed to a consular officer of the United States accredited to a civilized nation.

In regard to the same deposition it was *pointed out* that one of the interrogatories, which was objectionable in form but was answered properly, doubtless would have been expressed in the proper manner if the objection to its form had been made when the interrogatories were filed.

Non-resident aliens, domiciled in the country of a friendly nation, who are dependent for support upon the earnings of a deceased injured employee insured under the provisions of the workmen's compensation act, are entitled to the benefits of the provisions of that act.

R. L. c. 151, § 37, in regard to proof of marriage, does not apply to records of foreign marriages, but *it seems* that, in order that a certificate of a foreign marriage should be received in evidence, there must be proof either of a statute of the foreign State or nation requiring the record to be made or of some legal obligation or established practice requiring the keeping of the record or of some fact respecting the authenticity of the record of the effect of which the court can take judicial notice.

This court does not take judicial notice of the authority of town officials in the Kingdom of Italy in regard to the keeping of records.

In the claim described above, although papers purporting to be copies of certificates of the marriage of the deceased employee and of the births of his children, which were received in evidence by the arbitration committee, were held to have been incompetent, it appeared that the widow of the deceased employee in her deposition testified to the fact of her marriage with the deceased and to the birth of their three children and their ages, and that this testimony was uncontradicted, and it was *held* that this evidence of marriage and birth was competent and that the erroneous admission of the copies of the certificates accordingly was harmless error.

In the claim above described the Industrial Accident Board found that the deceased contributed to the support of his wife during the year before his death a certain number of lire which were equivalent to a certain number of dollars. It was contended by the insurer before this court that the board could not take judicial notice of the value of an Italian lira in United States money and that there was no evidence on the subject, but it appeared that the insurer did not take this objection at the hearing before the Industrial Accident Board or in the Superior Court unless it was raised by the general request for a ruling that no award could be made, and it was *held* that this objection, which if it had been raised at the proper time easily could have been met by the introduction of the required evidence, was not open to the insurer.

In the claim above described, upon the question of dependency, the evidence was that the family of the deceased consisted of his wife and their three children, respectively nine, six and two years of age, who lived in Italy. The widow testified in her deposition that since her husband last left Italy her means of support had been money sent by her husband from the United States, that during the last year before his death she had received over two thousand lire and that before he left Italy they were supported "with the money we earned in working in the fields," and that the deceased had no other property except "the house in which I lived at the time of his death." There was no evidence to show how valuable the house was in which the widow lived, the nature of the deceased employee's title to it, what its rental value was, what was its condition

or state of repair, whether it was encumbered by mortgage or otherwise, or the character of the neighborhood, city or town in which it was. Nothing appeared except that the family lived in the house. The Industrial Accident Board found that the widow was wholly dependent upon the wages of her husband for support. *Held,* that the finding of total dependency was not warranted by the evidence, and that a further hearing should be given before the Industrial Accident Board in which the claimant ought to be allowed to introduce further evidence and the insurer should have the same privilege.

In the same claim the board found as a fact that the three children of the deceased employee also were wholly dependent, and it was *held* that there should be a further hearing on this question also.

In the same case it was *said* that, in a claim of this nature, where there are a widow and minor children wholly or in part dependent, the decree should be of easy comprehension and ought to contain a clause stating expressly that under the terms of the act the payment to the widow is to cease in case of her death before the expiration of the period of payment.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board awarding to Margherita Pucci Derinza, of Savignano di Puglia in the Province of Avellino in the Kingdom of Italy, as the wholly dependent widow of Michael Derinza, the compensation of $7.20 a week for a period of five hundred weeks from March 29, 1915.

The case was heard by *Hardy,* J. The evidence and the proceedings before the arbitration committee and the Industrial Accident Board so far as they relate to the questions raised on the appeal, are described in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board; and the insurer appealed.

The part of St. 1915, c. 275, referred to in the opinion is as follows: "Upon the written request of the [Industrial Accident] board or of any member thereof, together with interrogatories and cross-interrogatories, if any there be, filed with the clerk of the Superior Court for any county of this Commonwealth, commissions to take depositions of persons or witnesses residing without the Commonwealth, or in foreign countries, or letters rogatory to any court in any other of the United States or to any court in any foreign country, shall forthwith issue from the said Superior Court, as in cases pending in said Superior Court, . . ."

R. L. c. 151, § 37, referred to in the opinion as applying only to domestic records, is as follows: "The record of a marriage made and kept as provided by law by the person by whom the marriage

was solemnized, or by the clerk or registrar of a city or town, or a copy of such record duly certified, shall be *prima facie* evidence of such marriage."

*N. F. Hesseltine & J. F. Scannell*, for the insurer, submitted a brief.

*G. Gleason*, for the dependent widow.

RUGG, C. J.   The deceased admittedly received fatal injuries in the course of and arising out of his employment by a subscriber under the workmen's compensation act.

1. There were irregularities in the application for the deposition to take the evidence of the widow of the deceased.   Before the enactment of St. 1915, c. 275, there was no special provision for the taking of depositions in foreign countries in workmen's compensation cases.   Letters rogatory could not issue in such cases. *Martinelli, petitioner*, 219 Mass. 58.   The entire subject is now covered by that statute.   The present deposition purports to have been taken under its terms.   Therefore the words of the statute afford the sole guide as to the necessary steps.   It expressly provides that a commission to take a deposition shall issue "upon the written request of the board or of any member thereof."

2. There was in the case at bar no "written request" whatever. The filing certificate of the clerk of the Superior Court shows that the application was made by the Industrial Accident Board, but not that it was made in writing.   The filing of the interrogatories by the secretary of the board was not a written request for a commission, but was an utterly different matter.   Interrogatories are expressly required by the statute, and are the essential basis for the taking of a deposition.   That is one thing.   The written request for a commission is another and quite separate thing.   It cannot rightly be said that the writing out of the interrogatories by the secretary of the board was a written request for the issuing of a commission to a consul of the United States in Italy to take a deposition.

3. The making of a written request for a deposition by the Industrial Accident Board hardly can be said to be a merely formal requirement.   It is to be made by a public board acting impartially and not as an adversary party.   The written request is a matter of substance.   It frequently might be open to inference, as it is in the case at bar, in view of the certificate of the clerk of the

Superior Court, that the commission was issued at the request of the board, and that the omission of the board to make the written request was by mistake or oversight. If so, it could be cured by the filing of a written request by the board or some member of it, and the allowance of that request by the Superior Court by a *nunc pro tunc* order. *Perkins* v. *Perkins*, 225 Mass. 392, 396, 397.

4. The case has been argued as if the request for the commission to take the deposition had been made by the secretary of the board in its behalf. The secretary of the board cannot make such request. The board is empowered by Part III, § 2, of the act (St. 1911, c. 751) as amended to "appoint a secretary" and to "remove him." No provision fixing his duties has come to our attention. The phrase of the statute is that the commission to take a deposition shall issue "upon the written request of the board or of any member thereof." These words fairly interpreted mean that the application must be actually signed by the board or by some member of the board. The statutory words impose a personal responsibility in making the application to be manifested by the signatures of the board or some member of it. They do not mean that the application is a purely clerical matter which may be delegated to an agent, officer or employee. A written request by the secretary of the board cannot be held to be the equivalent of a "written request of the board or of any member thereof." See R. L. c. 8, § 5, cl. 25; *Finnegan* v. *Lucy*, 157 Mass. 439.

5. It does not follow, however, that the deposition must be rejected. No objection was made to the form of the deposition until it was offered in evidence before the arbitration committee. The insurer filed interrogatories and hence must have known or had the opportunity for observing this irregularity at its inception. It has been held that objections to irregularities in the form of a deposition must be taken in some appropriate manner by notice, motion to suppress, or otherwise, before the trial opens, or they will be held to be waived. It is only objections to the substance of the interrogatories or answers that avail when presented for the first time at the trial. *Atlantic Mutual Fire Ins. Co.* v. *Fitzpatrick*, 2 Gray, 279. *Palmer* v. *Crook*, 7 Gray, 418. *Howard* v. *Stillwell & Bierce Manuf. Co.* 139 U. S. 199, 205. *Bibb* v. *Allen*, 149 U. S. 481, 489.

6. It appears from the report of the arbitration committee that direct interrogatories were drafted and signed by the secretary of the board "in behalf of" the claimant, and that "he was acting for a committee on arbitration which had been formed to hear the case." The further fact is stated that "the alleged widow lives in a foreign land. She is without counsel in these proceedings." It does not appear that the insurer knew of the fact that the interrogatories were thus framed until advised of it by the report of the arbitration committee. Its objection to the deposition on this ground is treated as open to it. There is no necessary incompatibility between the duty imposed upon the arbitration committee of passing upon the rights of the dependents and the insurer, and the preparation of interrogatories to the widow of a deceased employee by the secretary of the board at the request of such committee under the circumstances here disclosed. An examination of the interrogatories does not disclose such a partial attitude of mind as to warrant the inference that the arbitration committee, assuming that they directed the line of inquiry or the particular phrase of the questions, disqualified themselves from performing the duty imposed on them by the statute.

7. There is nothing in the objection to the admission of the deposition on the ground that it did not appear that the deponent could be punished for perjury in the place where it was taken. The commission was in usual form directed to a consular officer of the United States accredited to a civilized nation. The return was in due form. This was enough to make the deposition admissible *prima facie*. L. R. c. 175, §§ 42, 45. There is nothing in *Commonwealth* v. *Smith*, 11 Allen, 243, to the contrary.

8. There is no reversible error in the admission in evidence of the answers to the interrogatories, so far as the exceptions to such admission have been argued orally or upon the brief of the insurer. The question as to the intention of the deceased husband when he left Italy to rejoin his wife and children, was objectionable in form; but the answer was responsive. It doubtless would have been remedied if objection had been made when the interrogatories were filed. No other point has been argued in this connection.

9. It is urged that non-resident aliens domiciled in a friendly nation are not entitled to the benefit of the provisions established

by the workmen's compensation act for the compensation of those dependent upon the earnings of a deceased employee. Cases where awards to such aliens have been sustained by this court without the question having been raised are passed by and the case is considered on its merits. The starting point in this Commonwealth is *Mulhall* v. *Fallon*, 176 Mass. 266. That case held that non-resident aliens were entitled to the penalty awarded to dependents by the employers' liability act against an employer wrongfully causing the death of an employee. The reasons for that decision are there set forth at length. The same reasoning has since led to a similar decision by the Supreme Court of the United States respecting the federal employers' liability act, *McGovern* v. *Philadelphia & Reading Railway*, 235 U. S. 389, and by the Court of King's Bench in England respecting the English employers' liability act. *Davidsson* v. *Hill*, [1901] 2 K. B. 606. To the same effect are *Cetofonte* v. *Camden Coke Co.* 49 Vroom, 662, and cases collected at page 669, *Atchison, Topeka & Santa Fe Railway* v. *Fajardo*, 74 Kans. 314, *Kellyville Coal Co.* v. *Petraytis*, 195 Ill. 215, 217. There is no sound distinction in principle between *Mulhall* v. *Fallon* and the case at bar. The difficulties of investigating the facts as to the dependency of non-resident aliens, the temptation to fraud and the obstacles as to making payments, urged by the insurer against this construction, appear to be no greater in one class of cases than in the other. So far as these circumstances afford opportunities for overreaching, they are legislative rather than judicial questions. There is in the words of our act no exclusion from its benefits of those dependents who are non-resident aliens, as is the case in the statutes of some other jurisdictions. See, for example, *Gregutis* v. *Waclark Wire Works*, 86 N. J. L. 610. This omission, in view of the investigation of the legislation of other States which preceded the enactment of our statute, is a circumstance to be considered. The theory of the workmen's compensation act is a kind of insurance against accident. The Massachusetts compensation law has been characterized as "an elective compensation insurance law giving compensation for all injuries arising out of employment," with exceptions not now pertinent. Report of the Massachusetts Commission on Compensation for Industrial Accidents, 1912, page 46. Insurance money naturally goes to the beneficiary

regardless of geographical boundaries of residence. The deceased employee, although an alien, if he had lived, manifestly would have been entitled to the benefits of the act. The *quasi*-accident insurance goes by the act to those to whom naturally the deceased would have made real accident insurance payable if he had contracted for it, namely, to those dependent upon his earnings for support. It would be difficult to read into the act by construction an exception adverse to the claims of non-residents who are not alien enemies. This is a quite different question from holding that the act does not by its terms have force as to injuries received beyond the territorial limits of the State, as in *Gould's Case*, 215 Mass. 480. The result is that aliens who are residents of friendly nations and who are dependents and otherwise within the terms of the act, are not barred from compensation solely by reason of alienage. This conclusion is in accord with other decisions upon statutes which do not expressly exclude non-resident aliens from their operation, and are thus in this respect like our act. *Krzus* v. *Crow's Nest Pass Coal Co. Ltd.* [1912] A. C. 590. *Victor Chemical Works* v. *Industrial Board*, 274 Ill. 11, 19–22. *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, 416.

10. Papers purporting to be copies of certificates of the marriage of the deceased and of the birth of his several children were received in evidence by the arbitration committee. They bore at the heading and at the end the name of an Italian town, and purport to have been authenticated by one who signed his own name followed by the words "civil officer," and there was a seal attached. Plainly these were not admissible under R. L. c. 151, § 37. That section relates to marriages solemnized as provided in that chapter and under the laws of this Commonwealth. That is manifest from the express terms of the first enactment of the substance of this section in Rev. Sts. c. 75, § 25, where it was provided that, "The record of a marriage, made and kept as before prescribed," should be received as evidence. There is no indication of a legislative intent to broaden the scope of the section in making the subsequent enactments. The familiar rule is that verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of pre-existing law in the absence of some accompanying report of revisers or other indication showing an express purpose to change the substance of the law.

*Main* v. *County of Plymouth*, 223 Mass. 66, 69, and cases collected.
The discussion in *Shutesbury* v. *Hadley*, 133 Mass. 242, proceeds
on the footing that this section of the statute applied only to
domestic records. The only provision in our statutes as to proof
of foreign marriages is in § 38 of the same chapter relating to those
solemnized in foreign countries by consuls or diplomatic agents
of the United States. Manifestly that has no pertinency to the
case at bar.

These copies of certificates were not competent evidence. There
was no proof of the law of Italy requiring or permitting the keep-
ing of such records by the town, the deposition of the custodian
of the records covering material points was not proffered, nor was
there any evidence respecting their character, the circumstances
under which the records were kept, or the source from which the
certificates came. No one testified that they were copies of an
official original. There was no authentication of them as genuine
by a consular officer of the United States. There was absolutely
nothing beyond the bare production of the copies of the certifi-
cates. In the absence of a statute making such certificates ad-
missible by themselves, or something to show that they were
entitled to a degree of credence, they were not competent. *Com-
monwealth* v. *Morris*, 1 Cush. 391. *Kennedy* v. *Doyle*, 10 Allen,
161, 165. *Hancock* v. *Catholic Benevolent Legion*, 38 Vroom, 614.
*Barber* v. *International Co. of Mexico*, 73 Conn. 587, 601, 603.
*Lavin* v. *Mutual Aid Society*, 74 Wis. 349. *Faustre* v. *Common-
wealth*, 92 Ky. 34. *Drosdowski* v. *Order of Chosen Friends*, 114
Mich. 178. *Spencer* v. *Lyman*, 27 So. Dak. 471. *State* v. *Dooris*,
40 Conn. 145. *Stanglein* v. *State*, 17 Ohio St. 453. *Blackburn* v.
*Crawfords*, 3 Wall. 175, 187. *People* v. *Etter*, 81 Mich. 570. *The
Earl of Athlone's Claim*, 8 Cl. & Fin. 262. See *Jewett* v. *Boston
Elevated Railway*, 219 Mass. 528, 531.

It is not necessary to decide just what formalities would have
been required to render them competent evidence, as the present
record is entirely bald of anything in that direction. An examina-
tion of all the cases collected in 26 Cyc. 885, note, and relied on
by the arbitration committee and the Industrial Accident Board,
as to foreign marriages, shows that in none of them was the mar-
riage certificate admitted without either an express statute ad-
mitting the certificate, or evidence of some statute of the foreign

State or nation requiring the record to be made, or some evidence showing a legal obligation or established practice to keep the record, or some fact respecting the authenticity of the record of the effect of which the court can take judicial notice. No one of these elements is present in the case at bar. We can have no judicial knowledge respecting records of town officers in Italy.

11. The error in the reception of this evidence does not call for a reversal of the decree. The widow in her deposition testified categorically to the fact of her marriage with the decedent and to the birth of their three children and their ages. Her testimony was competent. *Commonwealth* v. *Dill*, 156 Mass. 226. It was uncontradicted and there is nothing in the record to throw any shadow upon its truthfulness. It was in other respects believed by the arbitration committee and the Industrial Accident Board. Upon all the circumstances the admission of the copies of the certificates appears to have been harmless error.

12. The finding of the board was that the deceased contributed twenty-four hundred lire or $480 to the support of his wife during the year before his death. The testimony of the wife upon this point was stated wholly in terms of lire. It is strongly urged by the insurer that the board could not take notice of the value of the lire, an Italian monetary term, in United States money, and that the value and rate of exchange must be proved. The weight of authority seems to support this contention. *Kermott* v. *Ayer*, 11 Mich. 181. *Lowe* v. *Bliss*, 24 Ill. 168. *Gross* v. *Mendel*, 171 App. Div. (N. Y.) 237, 239. See, however, to the contrary, *Czerney* v. *Hass*, 144 App. Div. (N.Y.) 430, 435. The case of *Johnston* v. *Hedden*, 2 Johns. Cas. 274, often cited to sustain the view that the court will take judicial knowledge of the value of foreign money, well may be thought not to uphold so broad a proposition. That case was decided in 1801 respecting a bond executed in 1796 in terms of pounds. It is well known that the pound was a unit of value in the colonies before the Revolution. The dollar was established as the money unit of the United States by resolution of the Continental Congress of July 6, 1785, and the details of the decimal monetary system by resolution adopted on August 8, 1786. See, also, resolutions of October 16, 1786, and of April 21 and July 6, 1787. The first act of Congress establishing a mint and providing for a monetary system and general coinage was U. S. St. 1792,

c. 16, approved April 2, 1792. 1 U. S. Sts. at Large, 246. Within the memory of many now living the shilling has been commonly used as a measure of price in this Commonwealth. The statement in the opinion in *Johnston* v. *Hedden* that "Pounds are not a foreign or unknown money of account," should be read in the light of well known historical facts. The pound and shilling might be found to be measures of value adopted by parties in this country rather than as foreign coin at that early date. But it is not necessary to decide this question because it is not open to the insurer in this record. The insurer asked for no specific ruling directed to this defect in the evidence. If it had, doubtless evidence upon this point easily would have been discovered and presented. The only request which can be construed by any possibility as reaching to this point is the general one that there could be no recovery. That fairly ought not to be interpreted as aimed at this subsidiary and minor point of proof. In order to raise this question the request should have been more definite. In the translations of the copies of the Italian certificates which were received in evidence by the arbitration committee, was basis for a finding that the value of the lire was twenty cents in United States money. That may have been the ground of the finding. If they had been admitted rightly, they could have been used to this end. *Hubbard* v. *Allyn*, 200 Mass. 166, 171.

13. The administrator of the estate of the deceased concedes that the finding of the Industrial Accident Board, to the effect that the deceased was living with his wife, cannot be supported. *Nelson's Case*, 217 Mass. 467. *Gorski's Case*, 227 Mass. 456. The board found as a fact that the widow was wholly dependent upon the wages of the husband for her support. The evidence upon this point was that the family of the deceased consisted of his wife and their three children, aged respectively about nine, six, and two years. They lived in Italy and apparently never had been in the United States, where the deceased had been at work at several different periods, the last being for more than a year before the injury. The wife testified by deposition that since her husband last left Italy her means of support had been money sent by her husband from the United States, that during the last year before his decease she had received over two thousand lire and that before he left Italy they were supported "with the money we earned

in working in the fields," and that the deceased had no other property except "the house in which I lived at the time of his death." This must mean that he owned the house. The terms of our act award compensation to those dependent upon the "earnings" of the deceased employee, and not to those supported by him, differing thus from the statutes of some other jurisdictions. See, for example, *Crookston Lumber Co.* v. *District Court*, 131 Minn. 27. Therefore, in the case at bar the finding can be supported only if the wife could be found to have been totally dependent upon the earnings of her deceased husband, and not upon investments of his property. This is so, giving to "earnings" the broadest meaning of which it reasonably is susceptible. *Jenks* v. *Dyer*, 102 Mass. 235. *Chester* v. *McDonald*, 185 Mass. 54. The terms of Part II, §§ 7 and 12, the latter to the effect that "no savings or insurance of the injured employee . . . shall be taken into consideration in determining the compensation to be paid" under the act, do not modify and are not in any respect in conflict with the explicit and unequivocal provisions of Part II, § 6, and Part V, § 2, to the effect that dependency in case of the death of an employee shall be ascertained solely with reference to the fact whether the claimants were wholly or partly "dependent upon the earnings of the employee for support at the time of the injury."

There was no evidence to show how valuable the house was in which the widow lived, the nature of the deceased's title to it, what its rental value was, what was its condition or state of repair, whether it was incumbered by mortgage or otherwise, the character of the neighborhood, city or town in which it was, or anything further than the bald fact that the family lived in his house. Nevertheless, it was the house in which the family of the deceased lived. It was their home. Payment of rent, as matter of common knowledge, is a material part of the support of every family whose home is hired. If the housing is provided from some other source than the "earnings" of the employee, it cannot with due regard to the force of words be said that the wife is wholly dependent upon those "earnings." That element of support is a matter of substance. It is not so insignificant as to be negligible, as in *Carter's Case*, 221 Mass. 105, *Buckley's Case*, 218 Mass. 354, and *Caliendo's Case*, 219 Mass. 498. It is too material

to be ignored. *Kenney's Case,* 222 Mass. 401, 404. Manifestly, if the converse of this case were presented, it would inevitably be held that a person otherwise entitled to compensation, who was receiving house rent from the wages of an employee, was to that extent dependent upon his earnings. Findings in favor of dependents have been sustained on much more slender evidence than that would be. *McMahon's Case, ante,* 48. The burden of proving the right to recover under the act rests upon the one asserting it, in this case upon the wife. *Sponatski's Case,* 220 Mass. 526. If the house of the husband was in truth of no value, and the use of it by the family worthless, there must be evidence direct or inferential to that effect. It cannot be presumed in the absence of any evidence on the subject. The finding as matter of fact of total dependency by the wife was not warranted on this record.

The board has found as a fact that the minor children were totally dependent. That finding rests upon the same evidence as the complete dependency of the mother, and therefore, for the reasons already stated, must be set aside as a finding of total dependency. Moreover, it hardly can be supposed that this finding was intended by the board to stand if the finding of total dependency of the wife could not stand. The result of allowing that to stand would be that the payment would go to the children to be held by a guardian for their benefit to the entire exclusion of the widow, because under the last paragraph of § 7 of Part II, in case of persons wholly dependent and others partly dependent, the "persons partly dependent, if any, shall receive no part thereof." It follows that on this point there must be a further hearing by the Industrial Accident Board.

14. The insurer objects to the form of the decree on the ground that it appears to direct the payment to be made to the widow for a full period of five hundred weeks, regardless of the possibility of her death intervening. It was held in *Murphy's Case,* 224 Mass. 592, that a weekly payment to a dependent under the act comes to an end when the dependent dies. See *Bartoni's Case,* 225 Mass. 349, 354. While that would be the effect of the decree entered, it is better in cases of this nature that the decree should state its exact effect in terms not open to misunderstanding by those not learned in the law. It follows that decrees in cases of this nature ought to contain a clause stating in express terms

the effect of the workmen's compensation act, that the payment is to cease upon the decease of the dependent before the expiration of the period of payment.

Since the Industrial Accident Board proceeded in the hearing upon erroneous principles of law, the widow ought to be allowed, if she desires, to introduce further evidence at a new hearing. If she does introduce further evidence, the insurer must have the same privilege and the case be considered anew upon this point. *Doherty's Case*, 222 Mass. 98. The decree must be reversed and the case remanded to the Industrial Accident Board for further hearing on the question of dependency.

*So ordered.*