### COMMONWEALTH *vs.* SAMUEL SLAVSKI.
### SAME *vs.* SAME.

Middlesex.     April 11, 1923. — May 25, 27, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, PIERCE, & CARROLL, JJ.

*Practice, Criminal,* Trial of complaints together, Conduct of trial. *Evidence,* Certificate of analyst of department of health, Presumptions and burden of proof. *Constitutional Law. Witness. Intoxicating Liquor. Nuisance. Parent and Child. Agency,* Existence of relation.

The Superior Court has discretionary power to order a defendant tried at the same time upon two complaints, in the first of which he was charged with keeping and maintaining, in a certain town during three months previous to October 5 of a certain year, a certain tenement "by him used for the illegal sale and illegal keeping for sale of intoxicating liquor," and in the second of which he was charged with exposing and keeping intoxicating liquor for sale in the same town on October 11 of the same year. *Commonwealth* v. *Bickum,* 153 Mass. 386, no longer states the correct practice in this State.

It is the heavy obligation of the trial court sedulously to take care that the defendant, tried at the same time upon two complaints for criminal offences, is not confounded in his defence, that the attention of the jury is not dis-

tracted, and that in no aspect are the substantive rights of the defendant adversely affected by requiring him to proceed to trial on separate complaints for different offences or on separate counts for different offences in one complaint. Per RUGG, C.J.

The character of the public records, which at the time of the adoption of the Constitution of the Commonwealth formed an acknowledged exception to the rule of art. 12 of the Declaration of Rights that, in prosecutions for crime, " every subject shall have a right . . . to meet the witnesses against him face to face," did not become rigid for all time for evidential purposes, but the General Court had power, under the grant empowering it to make, ordain and establish all manner of wholesome and reasonable laws not repugnant to the Constitution, to add to the varieties of public records admissible as evidence under the principles of law prevailing at the time of the adoption of the Constitution.

A statement of the rule deducible from decisions relating to public records which rightly form an exception to the rule laid down by art. 12 of the Declaration of Rights, above described, which, while it may not be applicable universally and may be subject to some exceptions, seems practical as a working rule, is that a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries, conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects and involving the exercise of judgment and discretion, expressions of opinion, and the making of conclusions, are not admissible in evidence as public records. Per RUGG, C.J.

Every rational presumption is made in favor of the validity of a statute, and conflict with the Constitution must be established beyond reasonable doubt before the court on the ground of its unconstitutionality can refuse to enforce it.

The provision of G. L. c. 138, § 54, that statements, in the form of the certificates prescribed by § 55, by the analyst of the department of public health, " of the percentage of alcohol by weight at sixty degrees Fahrenheit " which is contained in samples of liquors submitted to the department by certain municipal and State authorities, " shall be *prima facie* evidence of the composition and quality of the liquors to which it relates," is not violative of that part of art. 12 of the Declaration of Rights to the effect that, in prosecutions for crime, " every subject shall have a right . . . to meet the witnesses against him face to face," and does not transcend the power of the Legislature.

At the trial together of the two complaints above described, there was evidence tending to prove the following facts: three bottles of intoxicating liquor were found on September 30 in the defendant's absence in a barn adjoining a house owned by the defendant's wife and occupied by him, his family and boarders. For more than two months previous to October 5 on numerous occasions persons were seen going to and from the premises under such circumstances as thereby to furnish evidence proper for the consideration of the jury upon both complaints as indicating that intoxicating liquors were sold there. On October 11, a man was seen to knock at the defendant's kitchen door about 8:25 P.M. The defendant was absent. The door was opened by the defendant's son, seventeen years of age, who went out into

the yard, took a quart bottle from his inside pocket and passed it to the man, who gave the son money. The man was arrested when he had gone but about one hundred yards, threw the bottle on the ground and spilled some of it. It contained intoxicating liquor. The man was drunk. *Held,* that

(1) There was evidence sufficient to support a verdict of guilty on each complaint;

(2) While proof of a single sale of intoxicating liquor standing alone and unsupported by other circumstances will not warrant a conviction for maintaining a nuisance, a request for a ruling to that effect was inapplicable to the evidence above described;

(3) While the mere existence of the relation of father and son is not enough to show agency, where a minor son makes his home with his father in a tenement under the general control of his father and is not shown to have been emancipated or to have any independent occupation, there is foundation for the inference that the father is principal and the son agent as to the acts of the son with reference to transactions, of the nature shown by the above evidence, affecting the character of the household and not apparently done secretly or furtively as to the one in control of the home;

(4) There was evidence sufficient to warrant a finding that the minor son of the defendant living in his home was authorized by the defendant to make the sale which was the subject of the second complaint;

(5) It was proper to refuse a request, " The defendant is not responsible in these cases for any unlawful act of his son unless such unlawful act was done by the direction of the defendant," as the son's authority might arise by implication from circumstances as well as by express direction;

(6) It must be presumed, in the absence of anything in the exceptions to show the contrary, that full instructions were given on the general subject of criminal responsibility of a principal for the conduct of an agent acting within the scope of his authority;

(7) It was proper to refuse to instruct the jury that, " in order to convict the defendant in . . . [the second case] the government must prove beyond a reasonable doubt that the defendant kept the short quart of moonshine taken from the visitor on October 11, 1922, with intent to sell it within the Commonwealth and contrary to its laws," because such request accentuated a distinction between the personal conduct of the defendant and that of his agent and it must be presumed, in the absence of anything to indicate the contrary, that full and accurate instructions were given as to the burden of proof.

Two COMPLAINTS, received and sworn to in the First District Court of Northern Middlesex, respectively on October 5 and October 18, 1922, the defendant being charged in the first complaint with keeping and maintaining at Ayer during the three months preceding October 5, 1922, a certain tenement " by him used for the illegal sale and illegal keeping for sale of intoxicating liquor, to the common nuisance of all the people," and in the second complaint with

exposing and keeping intoxicating liquor for sale at Ayer on October 11, 1922.

On appeal to the Superior Court, the cases were called for trial before *Hammond*, J., and the Commonwealth proposed that they be tried together. The defendant objected, denying the right of the court to order the two complaints tried together. The judge ruled that he had discretionary power to order a trial of the defendant upon both complaints at one time and, subject to the defendant's exception, ordered such a trial.

There was evidence that the defendant lived in a house owned by his wife in Ayer, that his family consisted of himself, his wife, two married sons and three minor sons and that he had three boarders.

On the first complaint the only intoxicating liquors shown by direct evidence to have been kept upon the premises during the three months previous to October 5, 1922, were a little less than three quarts of " moonshine," so called in the record, which were contained in three bottles found by the police officers in a barn in the yard in the rear of the house, being a part of the premises, during a search of the premises made on September 30, 1922, under a search warrant in the defendant's absence. At the same time, the officers found a small tin funnel in the barn, which was wet and smelled of " moonshine."

The Commonwealth introduced evidence tending to show that during the period between July 30, 1922, and October 5, 1922, on numerous occasions persons were seen going to and from the premises in such circumstances as thereby to furnish evidence proper for the consideration of the jury upon both complaints as indicating that intoxicating liquors were sold there.

On the second complaint, a police officer testified that at about 8:25 P.M. on October 11, while he was watching the house of the defendant, one Patrick O'Gara came to the kitchen door during the absence of the defendant and rapped on the door, that the defendant's son Simon, seventeen years of age, came to the door and then went out into the yard and took a quart bottle from his inside pocket and

passed it to O'Gara, who gave him some money; that O'Gara then left the house and had gone but a hundred yards or so when the officer overtook and arrested him; that O'Gara was drunk, that he threw the bottle on the ground and spilled some of it. The liquor taken from O'Gara was the only intoxicating liquor which the government claimed was kept by the defendant under the second complaint. The defendant excepted to the introduction of any evidence of the actions of O'Gara or of the defendant's son Simon in his absence.

The only evidence offered by the prosecution to prove the alcoholic contents of the "moonshine" were four certificates in the form prescribed by G. L. c. 138, § 55, signed by the analyst of the department of health. There was one certificate for each bottle of the three seized on September 30 and one certificate for the bottle taken from O'Gara. The defendant separately objected to the introduction of each of these certificates, not because they did not conform to the statute but on the ground that the statute was unconstitutional. The analyst was not called as a witness, and the defendant contended that he had the right to meet the analyst face to face. The trial judge admitted the certificates in evidence, subject to exceptions by the defendant.

The foregoing was stated to constitute all the evidence material to the bill of exceptions.

The defendant asked the trial judge to give the following instructions to the jury:

" 1. There is no evidence which would warrant the jury in finding that the defendant made any illegal sale of intoxicating liquor within the period covered by the complaint for a liquor nuisance [the first complaint].

" 2. There is no evidence which would warrant the jury in finding that the defendant illegally kept intoxicating liquor for sale, within the period covered by the complaint for a liquor nuisance.

" 3. Proof of a single sale of intoxicating liquor is not sufficient to warrant a conviction of keeping and maintaining a liquor nuisance.

" 4. On all the evidence . . . [relating to the first com-

plaint], the jury would not be warranted in returning a verdict of 'guilty' and the verdict must be 'not guilty.'

" 5. On all the evidence . . . [relating to the second complaint], the jury would not be warranted in returning a verdict of 'guilty' and the verdict must be 'not guilty.'

" 6. There is no evidence in this case that any short quart of moonshine was found in the defendant's possession on October 11, 1922.

" 7. There is no evidence in this case that any short quart of moonshine was found on the premises occupied by the defendant on October 11, 1922.

" 8. There is no evidence in this case which would warrant the jury in finding that the defendant authorized his son Simon to sell the short quart of moonshine to Patrick O'Gara on October 11, 1922, even if the jury believed Simon did make such a sale to O'Gara.

" 9. In order to convict the defendant in . . . [the second case] the government must prove beyond a reasonable doubt that the defendant kept the short quart of moonshine taken from O'Gara on October 11, 1922, with intent to sell it within the Commonwealth and contrary to its laws.

" 10. The defendant is not responsible in these cases for any unlawful act of his son Simon unless such unlawful act was done by the direction of the defendant."

The trial judge refused to grant the requests for instructions numbered 1 to 9, inclusive, and refused to give the request numbered 10 in the form in which it was asked, but did instruct the jury that the defendant would not be responsible for any unlawful act done by his son Simon in the second case unless it was done by the consent of the defendant.

The jury returned a verdict of guilty in each case. The defendant alleged exceptions.

G. L. c. 138, § 54, is as follows: " The department of public health shall inspect and analyse all liquors sent to it by the licensing board of any city, the selectmen of any town, or by police officers or other officers authorized by law to make seizures of liquors, if the department is satisfied that the analysis requested is to be used in connection with the enforcement of the laws of the commonwealth. It

shall return to such licensing board, selectmen, police or other officers, as soon as may be, a certificate signed by it of the percentage of alcohol by weight at sixty degrees Fahrenheit which such samples of liquor contain. Such statement shall be *prima facie* evidence of the composition and quality of the liquors to which it relates."

The forms to be used are prescribed by § 55.

The cases were submitted on briefs.

*J. M. Maloney,* for the defendant.

*A. K. Reading,* District Attorney, *G. W. Pearson,* Assistant District Attorney, for the Commonwealth.

RUGG, C.J.  These are two criminal complaints, one charging the defendant with keeping and maintaining a tenement used as a liquor nuisance at Ayer in our county of Middlesex during the period of three months before October 5, 1922, and the other charging him with keeping intoxicating liquor for sale contrary to law at said Ayer on October 11, 1922.

1. There was no error in requiring the defendant to go to trial on both complaints at the same time. As long ago as 1842 it was said by Chief Justice Shaw to be a common practice to include in one indictment several distinct substantive offences of the same general character where the mode of trial and nature of punishment were the same, and thus to compel a defendant to a single trial, subject always to the duty and power of the court to order the prosecutor to elect on which of the counts the defendant shall be brought to trial if necessary for the protection of his substantial rights. *Carlton* v. *Commonwealth,* 5 Met. 532. This practice has continued up to the present. *Commonwealth* v. *Mullen,* 150 Mass. 394, and cases there collected. *Commonwealth* v. *Dow,* 217 Mass. 473. *Commonwealth* v. *Bishop,* 165 Mass. 148. *Lebowitch, petitioner,* 235 Mass. 357, 363. *Commonwealth* v. *Szczepanek,* 235 Mass. 411. *Commonwealth* v. *Dyer,* 243 Mass. 472. See *Castro* v. *Regina,* 6 App. Cas. 229, and *Rex* v. *Thompson,* [1914] 2 K. B. 99.

The crimes charged in these two complaints might have been set forth by two separate counts in one complaint. *Commonwealth* v. *Bickum,* 153 Mass. 386. There is no

difference in effect on the substantive rights of the defendant
and his just protection in every material particular between
bringing him to trial upon several counts in one indictment
or one complaint, on the one hand, and, on the other hand,
bringing him to trial upon several indictments or complaints,
provided in each instance the divers crimes thus charged are
such that they might have been charged in separate counts
in the same indictment or complaint, and settled by a single
trial without requiring the prosecutor to elect.   Procedure
of this nature ought not to depend merely upon an accident
of pleading.   When no substantial rights of a defendant are
at stake, the interest of the public requires that the guilt of
one accused of crime shall be decided as expeditiously and
inexpensively as is reasonably practicable.   Adherence to
an ancient practice as to separate trials is no longer demanded
in view of the modern system of criminal pleading.   It must
be held that *Commonwealth* v. *Bickum,* 153 Mass. 386, no
longer states the correct practice on this point.   Its authority
was shaken by *Commonwealth* v. *Seeley,* 167 Mass. 163, and
by *Commonwealth* v. *Rosenthal,* 211 Mass. 50.   It was said
in the latter case that " No sound reason can be given
why several indictments charging different crimes arising
out of a single chain of circumstances should not be tried
together.   Where several offenses might have been joined
in one indictment, and would be proved by substantially
the same evidence, or evidence connected with a single line
of conduct, and grow out of what is essentially one trans-
action, and where it does not appear that any real right
of the defendant has been jeopardized, it would be a refine-
ment not demanded by the law or by justice to require in
all instances a separate trial, simply because separate in-
dictments had been found for each offense."   That principle
is applicable to the case at bar.

 It is the heavy obligation of the trial court sedulously to
take care that the defendant is not confounded in his de-
fence, that the attention of the jury is not distracted, and
that in no aspect are the substantive rights of the defendant
adversely affected, by requiring him to proceed to trial on

separate complaints for different offences or on separate counts for different offences in one complaint.

Nothing on this record affords an indication that the defendant was in any way embarrassed or prejudiced by requiring him to go to trial upon both complaints. It was a matter of indifference, so far as concerned the genuine rights of the defendant to a fair trial, whether the pleading was in one form or the other. His position was in no respect worse than it would have been if both offences had been charged in distinct counts in a single complaint. No miscarriage of justice has occurred.

2. The bill of exceptions states that the only evidence offered " to prove the alcoholic contents of the ' moonshine ' were four certificates " in the form prescribed by G. L. c. 138, § 55, signed by the analyst of the department of health of analyses made pursuant to § 54 of the same chapter.

Confessedly the certificates are made competent evidence by statute. The objection to the admission of the evidence, which has been argued, relates to the constitutionality of the statute. The pertinent sections require inspection and analysis of all samples of liquors sent by designated officers to the department of public health, provided it is satisfied that the analysis requested is to be used in connection with the enforcement of the laws of the Commonwealth. A signed statement in the form prescribed of the percentage of alcohol by weight at sixty degrees Fahrenheit contained in such samples " shall be *prima facie* evidence of the composition and quality of the liquors to which it relates."

The statute is assailed as violative of that part of art. 12 of the Declaration of Rights to the effect that, in prosecutions for crime, " every subject shall have a right . . . to meet the witnesses against him face to face." It was said in *Commonwealth* v. *Richards*, 18 Pick. 434, at page 437, that " That provision was made to exclude any evidence by deposition, which could be given orally in the presence of the accused, but was not intended to affect the question as to what was or what was not competent evidence to be given face to face according to the settled rules of the common law." Dying declarations and testimony given

at an earlier trial between the same parties by a witness since deceased were there stated as classes of evidence admissible notwithstanding the constitutional provision. To the same effect is *Mattox* v. *United States,* 156 U. S. 237.

Substantially the same guarantee is found in art. 4 of the Amendments to the Constitution of the United States as in art. 12 of our Declaration of Rights. In *Kirby* v. *United States,* 174 U. S. 47, 54–61, the question was as to the constitutionality of an Act of Congress providing in effect that on the trial of a person charged with feloniously and knowingly receiving stolen postage stamps with intent to convert them to his own use, judgment of conviction of the principal felon should be *prima facie* evidence that the property actually was stolen. It was held that such a statute violated the provision of the Sixth Amendment to the Constitution of the United States that " in all criminal prosecutions the accused shall . . . be confronted with the witnesses against him." See in this connection *Commonwealth* v. *Knapp,* 10 Pick. 477, 482, 484. In *Dowdell* v. *United States,* 221 U. S. 325, at page 330 are these words referring to the same subject: " It was intended to prevent the conviction of the accused upon depositions or *ex parte* affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination."

The right of one charged with crime to be confronted by his accusers was not created and introduced as something new in criminal procedure by this constitutional provision, but an existing part of the law of the land was thereby secured against future change except by the people themselves. The purpose of this constitutional provision was to put beyond the possibility of abolition by legislative action the principle already established as a part of the common law that witnesses should confront the accused. That principle was adopted as a constitutional guarantee, but with the well recognized exceptions which were a part of the principle and essential to its practical vitality. Dying declarations and the reproduction of testimony previously given by a witness now deceased have already been mentioned.

One of the acknowledged exceptions to the face to face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution. Wigmore on Ev. §§ 1395–1398. It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value. Existing public records did not become rigid for all time for evidential purposes. Power to add to the varieties of public records under the principles of law prevailing at the time of the adoption of the Constitution is conferred upon the General Court under the grant to make, ordain and establish all manner of wholesome and reasonable laws not repugnant to the Constitution. There is analogy in this respect to the trial by jury preserved in all its essentials by the Constitution, which may be regulated by the Legislature as to details not impairing its essential integrity. *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467.

At common law and at the time of the adoption of the Constitution the admission in evidence of dying declarations was confined to prosecutions for homicide. *Thayer* v. *Lombard,* 165 Mass. 174. Wigmore on Ev. § 1432. That rule was extended to include prosecutions for abortion, and the statute to that end has been regarded as valid. G. L. c. 233, § 64. *Commonwealth* v. *Thompson,* 159 Mass. 56, 59. *Commonwealth* v. *Smith,* 213 Mass. 563. *Commonwealth* v. *Turner,* 224 Mass. 229. *Commonwealth* v. *Wagner,* 231 Mass. 265.

It has been held that weather records kept by officers under the law, *Commonwealth* v. *Dorr,* 216 Mass. 314; *Evanston* v. *Gunn,* 99 U. S. 660; the records of a postmaster, *Gurney* v. *Howe,* 9 Gray, 404; town and city records of enlistments in military service, *Hanson* v. *South Scituate,* 115 Mass. 336; certificate of discharge from military service on surgeon's certificate of disability, *Fitchburg* v. *Lunenburg,* 102 Mass. 358; return of enumeration of proprietors by overseers, *Pells* v. *Webquish,* 129 Mass. 469; record of

certificate of marriage as showing residence of the husband, *Shutesbury* v. *Hadley*, 133 Mass. 242; copy of public documents, *Whiton* v. *Atlantic City Ins. Co.* 109 Mass. 24; State register of soldiers and municipalities to which credited, *Worcester* v. *Northborough*, 140 Mass. 397; record of baptism showing date of birth kept by parish priest, *Kennedy* v. *Doyle*, 10 Allen, 161; map published by legislative authority, *Commonwealth* v. *King*, 150 Mass. 221; cause of death shown in public record of deaths, *Shamlian* v. *Equitable Accident Co.* 226 Mass. 67; *Broadbent's Case*, 240 Mass. 449; public record of birth certificate, *Taylor* v. *Whittier*, 240 Mass. 514; certificate of an acting comptroller of currency of papers on file showing numerous facts as to an insolvent national bank under a federal statute, *Weitzel* v. *Brown*, 224 Mass. 190; marriage records kept under the authority of our statutes, *Derinza's Case*, 229 Mass. 435, 442, all are admissible in evidence as public records under this general principle.

On the other hand, it has been held that the report of an autopsy of a medical examiner giving his opinion as to the cause of death, *Jewett* v. *Boston Elevated Railway*, 219 Mass. 528; *Commonwealth* v. *Borasky*, 214 Mass. 313, 317; the report of an investigation by State fire marshal as to the cause of a fire, *P. Garvan, Inc.* v. *New York Central & Hudson River Railroad*, 210 Mass. 275, 279; report of an inquest as to the cause of death, *Carney* v. *Boston Elevated Railway*, 219 Mass. 552; register of a draw tender descriptive of matters not within his personal knowledge, *Butchers Slaughtering & Melting Association* v. *Boston*, 214 Mass. 254; copy of a card showing examination and record concerning a purely voluntary activity of a public board, *Fondi* v. *Boston Mutual Life Ins. Co.* 224 Mass. 6; notes kept by city engineer voluntarily as to width of street, *Allen* v. *Kidd*, 197 Mass. 256; entry as to cause of fire made by chief of fire department, *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 545, have been held to be inadmissible.

In *Heike* v. *United States*, 112 C. C. A. 615; 192 Fed. Rep. 83, the defendants were indicted for entering for customs cargoes of sugar at less than their true weight. It was held

that the admission of dock books, kept by weighers as the result of their observations of scales at the time of weighing, as public records, did not contravene the constitutional guaranty.   *State* v. *Dowdy,* 145 N. C. 432.   *Johns* v. *State,* 55 Md. 350.   *Reeves* v. *State,* 7 Cald. 96, 101.   *State* v. *Smith,* 74 Iowa, 580, 583.   *Tucker* v. *People,* 122 Ill. 583, 593.   *State* v. *Donato,* 127 La. 393.

The discussion in many of these decisions relates to the general principles of the law of evidence and the interpretation of statutes.   The principle which seems fairly deducible from them is that a record of a primary fact, made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records.   This principle may not be universally applicable and there may be exceptions, but it appears to be available in general as a practical working rule.

The determination of the percentage of alcohol in liquor at a specified temperature is the ascertainment of a fact by well recognized scientific processes.   Chemical action and measurement in such an analysis do not depend in general upon the quickness of apprehension, retentiveness of memory, temperament, surmises or conjectures, of the individual. The admission in evidence of the record of such a fact made by a public officer pursuant to statutory obligation would be as likely to be accurate as many of the public records which have been held to be admissible.   There would seem to be as little likelihood of variation of result in such an analysis between different chemists as in the observation of the weather, enumeration of proprietors, or the notation of the weights on scales by other classes of public officers.   The General Court may have felt that it was wise and just with reference to owners of liquor and prospective defendants, as well as to the general public, to provide for an impartial

analysis by a public officer in order that the fact of alcoholic content in liquor seized might be established according to a scientific standard in which confidence might be reposed.

It is familiar law that every rational presumption is made in favor of the validity of a statute. Its conflict with the Constitution must be established beyond reasonable doubt before the court can refuse to enforce it. *Perkins* v. *Westwood*, 226 Mass. 268, 271. The present statute makes the record only *prima facie* evidence of the composition and quality of the liquors to which it relates. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 378, 380.

We are of opinion that the statute here attacked cannot be said to transcend the power of the Legislature or to be in conflict with art. 12 of the Declaration of Rights. To the same effect is *Bracy* v. *Commonwealth*, 119 Va. 867.

3. There was no error in denying the several requests for rulings. The first was not strictly applicable to a complaint for maintaining a liquor nuisance. There was evidence sufficient to support a verdict of guilty on both complaints.

(a) While proof of a single sale of intoxicating liquor standing alone and unsupported by other circumstances will not warrant a conviction for maintaining a nuisance, *Commonwealth* v. *Hagan*, 152 Mass. 565, and cases there cited, a request to that effect was inapplicable to the evidence in the case at bar. There was ample proof to support a finding that selling intoxicating liquor was a business conducted on the defendant's premises during the period alleged. *Commonwealth* v. *Coolidge*, 138 Mass. 193. A judge cannot be required to charge upon fragmentary parts of the evidence. *Ayers* v. *Ratshesky*, 213 Mass. 589, 593. *Commonwealth* v. *Shea*, 160 Mass. 6.

(b) Mere existence of the relation of father and son is not enough to show agency. *Commonwealth* v. *Keenan*, 152 Mass. 9. *Weiner* v. *Mairs*, 234 Mass. 156. *McGowan* v. *Longwood*, 242 Mass. 337. But where a minor son makes his home with his father in a tenement under the general control of his father and is not shown to have been emancipated or to have any independent occupation, there is foundation for the inference that the father is principal and

the son agent as to the acts of the son with reference to transactions of this nature affecting the character of the household and not apparently done secretly or furtively as to the one in control of the home.   Evidence of the acts of the minor son of the defendant as to the sale of intoxicating liquor within the curtilage of the home rightly was admitted in view of all the circumstances.

(c) There was evidence sufficient to warrant a finding that the minor son of the defendant living in his home was authorized by the defendant to make the sale which was the subject of the second complaint.   On this point the case at bar is within the authority of numerous decisions.   *Commonwealth* v. *Hyland,* 155 Mass. 7.   *Commonwealth* v. *Downey,* 148 Mass. 14.   *Commonwealth* v. *Gillon,* 148 Mass. 15.   *Commonwealth* v. *Coughlin,* 14 Gray, 389.   *Commonwealth* v. *Kozlowsky,* 243 Mass. 538.   See *Tornroos* v. *Autocar Co.* 220 Mass. 336, 341, and *Sousa* v. *Irome,* 219 Mass. 273.

(d) The instruction that the defendant would not be responsible for the unlawful act of his minor son unless it was done by his consent was given in connection with the refusal to grant a request that no such responsibility would arise unless the " act was done by the direction of the defendant."   The request rightly was denied.   While simple consent of the defendant to the unlawful act of his minor son, dissociated from all other facts, would not be enough to make the father criminally responsible for such act, it would be sufficient provided there were attendant conditions warranting an inference that the act thus consented to was within the scope of general authority conferred upon the son by the father.   *Commonwealth* v. *Reynolds,* 114 Mass. 306.   Such authority may arise by implication from circumstances as well as by express direction.   *Smith* v. *Jordan,* 211 Mass. 269.

(e) It must be presumed, in the absence of anything in the exceptions to show the contrary, that full instructions were given on the general subject of criminal responsibility of a principal for the conduct of an agent acting within the scope of his authority.   *Silver* v. *Graves,* 210 Mass. 26, 30.

*Nesson* v. *Adams,* 212 Mass. 429, 431. *Curlianis* v. *Reid,* 226 Mass. 185. It follows that the sale by the minor son to O'Gara might have been found to have been authorized by the defendant.

(f) It is assumed without deciding that even under the Eighteenth Amendment to the Constitution of the United States the jury must have been satisfied beyond a reasonable doubt that the defendant kept intoxicating liquor with intent to sell the same within this Commonwealth. *Commonwealth* v. *Blood,* 11 Gray, 74. But there was no error in denying the ninth request because in its context the request accentuated a distinction between the personal conduct of the defendant and that of his agent. Again, it must be presumed, in the absence of anything to indicate the contrary, that full and accurate instructions were given as to the burden of proof. There was no error in the denial of the several requests for instructions.

*Exceptions overruled.*