MICHAEL RICE & another[1] vs. JAMES HANRAHAN & SONS & another.[2]

Hampshire. May 16, 1985. — September 5, 1985.

Present: ARMSTRONG, KASS, & WARNER, JJ.

*Evidence*, Hearsay, Relevancy and materiality, Regulations, Safety standards, Public documents, Judicial notice. *Uniform Commercial Code*, Warranty. *Warranty*. *Practice, Civil*, Instructions to jury.

At the trial of an action for alleged breach of warranty of merchantability, commenced by homeowners against both the manufacturer and installer of ureaformaldehyde foam insulation installed in their home pursuant to a contract with the installer, Department of Public Health regulations, promulgated after the sale of the insulation to the plaintiffs, were inadmissible as evidence that the insulation was unfit for the ordinary purposes for which it was intended to be used. [702-710]

At the trial of an action for alleged breach of warranty of merchantability, commenced by homeowners against both the manufacturer and installer of ureaformaldehyde foam insulation installed in their home pursuant to a contract with the installer, the judge's answer to a question from the jury, read as a whole, adequately and accurately informed them that the critical time, on the evidence presented, of fitness was the time of the sale, and that contemporaneous or subsequent odor could be considered evidence of unfitness. [710-712]

CIVIL ACTION commenced in the Superior Court Department on May 24, 1982.

The case was tried before *John F. Moriarty*, J.

*Edward Greer* (*Stephanie Levin* with him) for the plaintiffs.

*Jeffrey L. McCormick* for Celsius Insulation Resources, Inc.

WARNER, J. In 1978, the plaintiffs, Nancy Rice and her husband, Michael, entered into a contract with the defendant James Hanrahan & Sons (Hanrahan) for the installation of

---

[1] Nancy Rice.

[2] Celsius Insulation Resources, Inc.

ureaformaldehyde foam insulation (UFFI) in their home. The UFFI, allegedly manufactured by defendant Celsius Insulation Resources Inc.,[3] was installed in the Rice's home in February, 1979, by Hanrahan. Once installed, it allegedly emitted vapors which caused Nancy Rice to develop "moderate to mild neuropsychiatric memory losses" and which diminished the economic value of their home.

The case was tried on a breach of warranty of merchantability theory to a Superior Court jury which found, in answer to special questions, that the UFFI, at the time of its sale to the plaintiffs, was fit for the ordinary purposes for which it was intended. Judgment entered for the defendants, and the plaintiffs' motion for a new trial was denied. On appeal, the plaintiffs claim error in (1) the exclusion from evidence of Massachusetts regulations, promulgated after the sale to the plaintiffs, banning UFFI, (2) the judge's answer to a question from the jury during deliberations, (3) the defendants' counsel's closing arguments, and (4) the denial of the plaintiffs' new trial motion.

1. The plaintiffs' principal argument is that the judge erred in excluding from evidence certain Department of Public Health regulations. The regulations, which took effect in November of 1980, banned UFFI as a hazardous substance and required its repurchase and removal by manufacturers and installers. 105 Code Mass. Regs. §§ 650.221 - 650.222 (1981).[4] The judge excluded the regulations on the dual bases that their effective date was subsequent to the sale of UFFI to the plaintiffs and that the designation of UFFI as a banned and hazardous substance was in the form of a legislative, as opposed to an adjudicatory, determination. We hold that the regulations were hearsay and were properly excluded.

Safety standards, whether enacted by governmental entities pursuant to their rule making power, by industry associations,

---

[3] The plaintiffs also brought suit against Technical Resins Inc., as a manufacturer of UFFI; this defendant was defaulted.

[4] These regulations, upheld in *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, appeal dismissed sub nom. *C.P. Chem. Co.* v. *Commissioner of Pub. Health*, 464 U.S. 923 (1983), cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983), were revised as of June 30, 1984.

or by testing organizations, have been found admissible, in the sound discretion of the trial judge, in products liability cases "as evidence of a failure to exercise due care . . . as proof that the defendant knew or should have known of the defect . . . as evidence of the availability or feasibility of a remedy to correct a defect . . . as reflective of industry custom and practice . . . and as a basis for the examination or cross-examination of expert witnesses" (citations omitted). *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 671 (1980). The issue in this case is whether government safety regulations effective subsequent to a product's sale[5] are admissible as evidence that the product was in a defective condition unreasonably dangerous to the user or consumer at the time of sale, that is, unfit for the ordinary purposes for which the product was to be used.[6]

In seeking to demonstrate UFFI's unfitness,[7] the plaintiffs offered the regulations in issue for the truth of the assertion

[5] The regulations in this case became effective subsequent to the sale to the plaintiffs of the UFFI. We do not here consider the admissibility of government safety regulations in breach of warranty cases where the regulations are in effect prior to the sale of the product. See the discussion in 2 Frumer & Friedman, Products Liability § 16.03[4] [a], at 3A-98 (1984).

[6] Under the Uniform Commercial Code, G. L. c. 106 § 2-314(2) (c), inserted by St. 1957, c. 765, § 1, "[t]he merchant seller warrants that his goods are, among other things, 'fit for the ordinary purposes for which such goods are used.'" *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978), quoting from G. L. c. 106, § 2-314(2) (c). The implied warranty provisions under G. L. c. 106, §§ 2-314 to 2-318, have been construed as "congruent in nearly all respects with the principles [strict liability] expressed in Restatement (Second) of Torts § 402A (1965)," *Hayes* v. *Ariens Co.*, 391 Mass. 407, 412 (1984), quoting from *Back* v. *Wickes Corp.*, *supra*, which "impose [] on the seller a duty to prevent the release of 'any product in a defective condition unreasonably dangerous to the user or consumer,' into the stream of commerce." *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983), quoting from Restatement (Second) of Torts § 402A(1) (1965).

[7] The plaintiffs contend that the regulations were also relevant as to the defendants' failure to warn both in theories of negligence and breach of warranty. However, the judge did not submit the case to the jury on either theory of liability. As no objection to the judge's instructions was taken, the issue whether the judge erred in failing to instruct the jury on these theories of liability is not properly before us. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974); *Simon* v. *Solomon*, 385 Mass. 91, 107 (1982);

contained therein that UFFI was indeed hazardous enough to be banned. As extrajudicial statements offered for the truth of the matter asserted, the regulations were therefore inadmissible as hearsay, unless subject to some exception to the hearsay rule.[8]

---

*Weeks* v. *Harbor Natl. Bank,* 388 Mass. 141, 146-147 (1983); *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489, 491 (1977); Smith & Zobel, Rules Practice §§ 51.5 - 51.6 (1977 & Supp. 1985). Accordingly, the question of the admissibility of the regulations as to negligent failure to warn or failure to warn in breach of warranty is of no moment in this appeal.

[8] Preliminary to any consideration of hearsay is the issue of relevancy. In at least three jurisdictions, post-sale or post-accident government regulations have been found inadmissible in strict products liability cases on what appear to be relevancy grounds. In *Cover* v. *Cohen,* 61 N.Y.2d 261, 271 (1984), the New York Court of Appeals faced the issue whether a Federal motor vehicle safety standard post-dating the manufacture of a car sold to the plaintiffs was admissible as evidence of a design defect. Noting that "data not available at the time of manufacture [are] not admissible in such a case," the court found the regulations inadmissible. Similarly, in *Turner* v. *General Motors Corp.,* 584 S.W.2d 844, 852 (Tex. 1979), the court found no error in the exclusion from evidence of a Federal motor vehicle safety standard, effective subsequent to the sale of a product to the plaintiff, in a defective design case. In so finding, the court, by analogy, relied in part on the Texas negligence rule that a subsequently enacted regulation cannot retroactively establish the duty of care owed at the time of an accident. Again, in *Smith* v. *Formica Corp.,* 439 So.2d 1194, 1200 (La. Ct. App. 1983), the court ruled that evidence of a post-accident regulation banning a product as a hazardous substance was irrelevant to a determination whether the product was unreasonably dangerous since the defendant's conduct is measured on the basis of standards applicable at the time of the accident.

Our cases, however, make clear that the warranty provisions of G. L. c. 106, § 2-314 - 2-318, impose "on the seller a duty to prevent the release of 'any product in a defective condition unreasonably dangerous to the user or consumer,' into the stream of commerce. . . . This duty is unknown in the law of negligence and it is not fulfilled even if the seller takes all reasonable measures to make [the] product safe. The liability issue focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the . . . seller" (citation omitted). *Correia* v. *Firestone Tire & Rubber Co.,* 388 Mass. at 355. *Hayes* v. *Ariens Co.,* 391 Mass. at 413. Because the inquiry in breach of warranty focuses on the defective and unreasonably dangerous nature of the product and not on the defendant's knowledge or conduct, the fact that a determination of a product's unsafeness succeeds the sale of the product does not render it irrelevant.

The plaintiffs argue the admissibility of the regulations pursuant to G. L. c. 233, § 75.[9] Under § 75, printed copies of rules and regulations promulgated by a department of the Commonwealth are admissible in evidence without attestation unless their genuineness is questioned. This provision facilitates the authentication of a document — the method of proving that a document offered is in fact what its proponent represents it to be. See Liacos, Massachusetts Evidence 345, 375, 381 (5th ed. 1981). However, unlike statutes and rules exempting extrajudicial statements from the hearsay rule,[10] § 75 does not provide that legislative pronouncements and regulations are admissible to prove the truth of matters contained in them. Cf. *Jacobs* v. *Hertz Corp.*, 358 Mass. 541, 543-544 (1970) (G. L. c. 233, § 69, setting forth requirements for admissibility of court records and judicial proceedings of another State "does not make everything contained in such a record competent evidence" even though the record itself is properly authenticated). Section 75 is not in itself a sufficient basis for the admission in evidence of the regulations.

Although the plaintiffs have not argued on appeal, as they did at trial, the admissibility of the regulations under the public

---

[9] Section 75, as amended by St. 1943, c. 190, § 1, provides in pertinent part: "The printed copies of all statutes, acts and resolves of the commonwealth, public or private, which are published under its authority, and copies of the ordinances of a city, the by-laws of a town or of the rules and regulations of a board of aldermen, if attested by the clerk of such city or town, shall be admitted as sufficient evidence thereof in all courts of law and on all occasions. Printed copies of rules and regulations purporting to be issued by authority of any department, commission, board or officer of the commonwealth . . . shall be admitted without certification or attestation, but, if their genuineness is questioned, the court shall require such certification or attestation thereof as it deems necessary."

[10] See e.g., G. L. c. 79, § 35 (assessed value of real estate); G. L. c. 152, § 20A (copies of reports of medical examinations furnished employees); G. L. c. 152, § 20B (medical reports of incapacitated, disabled or deceased physician); G. L. c. 175, § 4 (commissioner of insurance report regarding insurance company); G. L. c. 185C, § 21 (housing report); G. L. c. 233, § 79B ("Statements of facts of general interest" contained in public compilations for the use of persons engaged in a particular occupation and relied on by them); Mass.R.Civ.P. 32(a) (3), 365 Mass. 787-788 (1974) (depositions); Mass.R.Crim.P. 35(g), 378 Mass. 907 (1979) (depositions).

document exception to the hearsay rule, we examine the applicability of this exception because of the importance in general of the question of the admissibility of such regulations. Under the common law public document exception, "a record of primary fact, made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact." *Commonwealth* v. *Slavski*, 245 Mass. 405, 417 (1923). *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980). See *Lodge* v. *Congress Taxi Assn.*, 340 Mass. 570, 573 (1960); *Jacobs* v. *Hertz Corp.*, *supra* at 544. Ordinarily, "records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records." *Commonwealth* v. *Slavski, supra.*

The regulations offered by the plaintiffs in this case were not records of primary facts. Contrast *Commonwealth* v. *Slavski, supra* at 415-416, and cases cited. The regulations were an "expression of public policy" of the Department of Public Health based on its investigations concerning UFFI and public hearings concerning the proposed ban. *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 712, 721, 726 & n.16 (1983). Cf. *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 79-80 (1979). As such, they were not subject to the public documents exception.[11] See *Passanessi* v. *C.J. Maney Co.*, 340 Mass. 599, 603 (1960); *Jacobs* v. *Hertz Corp., supra.* See also *Lindsay* v. *Ortho Pharmaceutical Corp.*, 637 F.2d 87, 94 (2d Cir. 1980).

---

[11] Proposed Mass.R.Evid. 803(8) (C) does not alter this conclusion. That rule, identical to Fed.R.Evid. 803(8) (C), would permit the introduction in evidence of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . in civil actions and proceedings . . . *factual findings* resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness" (emphasis supplied). The Advisory Committee Notes to the proposed Massachusetts rule cite *Commonwealth* v. *Slavski*, 245 Mass. 405, 416 (1923), and indicate that

Nor do we find that the regulations, for the purposes offered by the plaintiffs, were subject to judicial notice pursuant to G. L. c. 30A, § 6, as appearing in St. 1976, c. 459, § 5, which provides that "[t]he contents of the Massachusetts Register shall be judicially noticed." See *Purity Supreme, Inc.* v. *Attorney General*, 380 Mass. 762, 772 n.12 (1980); *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 926 (1980). Judicial notice of law, including agency regulations, dispenses with the need to offer evidence by permitting a court to recognize the principles of law governing the case before it. See McCormick, Evidence § 335 (3d ed. 1984); Liacos, Massachusetts Evidence 18 (5th ed. 1981). The plaintiffs offered the regulations here, not as law governing the disposition of the breach of warranty action, but for the truth of the assertion that UFFI was indeed so hazardous as to require banning.[12]

The Massachusetts cases cited by the plaintiffs in which a safety statute or regulation and violation thereof were admitted as evidence of negligence do not provide support for the admission of such regulations in a breach of warranty of merchantability action as evidence that a product was unfit. The violation of a safety regulation is admissible as evidence of negligence,

the scope of subsection (C) as to "factual findings" comports with the common law exception in continuing to exclude evaluative reports.

We note that Federal courts in construing the analogous Fed.R.Evid. 803(8) (C) have, in general, liberally construed "factual findings" so as to include evaluative government reports, including opinions and conclusions. *Kehm* v. *Procter & Gamble Mfg. Co.*, 724 F.2d 613, 617-619 (8th Cir. 1983). See, e.g., *United States* v. *American Tel. & Tel. Co.*, 498 F. Supp. 353, 359-360 (D.C. Cir. 1980); *Cohen* v. *General Motors Corp.*, 534 F. Supp. 509, 510-513 (W.D. Mo. 1982). But see, e.g., *Lindsay* v. *Ortho Pharmaceutical Corp.*, 637 F.2d 87, 94 (2d Cir. 1980); *Smith* v. *Ithaca Corp.*, 612 F.2d 215, 221-223 (5th Cir. 1980).

[12] The plaintiffs would not have been warranted in seeking recognition of the regulations under the doctrine of judicial notice of fact. Only factual matters which are "indisputably true" are subject to judicial notice. *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979). *Bezio* v. *Patenaude*, 381 Mass. 563, 579 (1980). See generally Liacos, Massachusetts Evidence 29-34 (5th ed. 1981 & Supp. 1985), and cases cited. See also Proposed Mass.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either [1] generally known within the territorial jurisdiction of the trial court or [2] capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned").

although not conclusive of the issue, see *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28 (1979); *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 139-140 (1985) (also holding that compliance with such a regulation is admissible to show lack of negligence); *Eagan* v. *Marr Scaffolding Co.*, 14 Mass. App. Ct. 1036, 1037 (1982), since a regulation "enacted by a body representing the interests of the public, imposes prima facie upon everybody a duty of obedience. Disobedience is, therefore, a breach of duty, unless some excuse for it can be shown which creates a different duty, that . . . overrides the duty imposed by the statute or ordinance," *Stevens* v. *Boston Elev. Ry.*, 184 Mass. 476, 479 (1904). See *Newcomb* v. *Boston Protective Dept.*, 146 Mass. 596, 600 (1888); *Gately* v. *Taylor*, 211 Mass. 60, 64-65 (1912). Thus, in negligence actions evidence of a safety regulation is not hearsay, as it is not offered as proof of the truth of matters contained in or underlying the regulation but rather to establish the prescribed standard of care. However, the inquiry in a breach of warranty case does not focus on whether a defendant has taken all reasonable measures to make a product safe but on whether a product was defective and unreasonably dangerous. *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983).

Nor are we persuaded by the cases from other jurisdictions relied on by the plaintiffs. In *Johnson* v. *William C. Ellis & Sons Iron Works*, 609 F.2d 820 (5th Cir. 1980), the court found statements in industry safety codes and, apparently, a government safety bulletin promulgated by the Department of Labor admissible in a products liability action under Fed.R. Evid. 803(18), the Federal hearsay exception for learned treatises. Massachusetts does not currently recognize that exception, see Liacos, Massachusetts Evidence at 352-353, except as authorized under G. L. c. 233, § 79C, in medical malpractice cases. See *Mazzaro* v. *Paull*, 372 Mass. 645, 648 (1977). In *Pyatt* v. *Engel Equip., Inc.*, 17 Ill. App. 3d 1070, 1071-1072 (1974), the court found health and safety rules of the industrial commission of the State of Illinois admissible in a strict liability action but failed to address the hearsay nature

of that evidence. *Ellis* v. *International Playtex, Inc.*, 745 F.2d 292, 299-304 (4th Cir. 1984), offers little guidance in the instant case. There, two government sponsored epidemiological studies on toxic shock syndrome consisting of "data compilations . . . setting forth factual findings" as well as "tentative conclusions," were found by the court to be admissible in a products liability action under Fed.R.Evid. 803(8) (C). *Id.* at 301. In contrast, the regulations in this case did not constitute scientific studies setting forth factual findings. In *Stonehocker* v. *General Motors Corp.*, 587 F.2d 151, 154-157 (4th Cir. 1978), the court, in a products liability action based on negligence, upheld the admission in evidence of a subsequently enacted Federal safety standard and the defendant's compliance therewith as evidence of due care. See *MacDonald* v. *Ortho Pharmaceutical Corp., supra* at 140. As we have noted, the duty to exercise due care is foreign to liability predicated on breach of warranty. See *Correia* v. *Firestone Tire & Rubber Co., supra* at 355.[13]

Other jurisdictions have either recognized or implicitly assumed the relevancy and admissibility of government regulations in strict liability and breach of warranty actions.[14] Some

---

[13] The plaintiffs' reliance on *Bradbury* v. *Ford Motor Co.*, 123 Mich. App. 179 (1983), is misplaced. In that case the Court of Appeals ruled that a National Highway Transportation Safety Administration report was admissible under Michigan's public records exception to the hearsay rule. The Supreme Court of Michigan reversed that ruling, holding that the public records exception does not allow the admission of investigative or evaluative reports. 419 Mich. 550 (1984).

[14] See, e.g., *Schwartz* v. *American Honda Motor Co.*, 710 F.2d 378, 383 (7th Cir. 1983) (compliance with applicable regulations, relevant and admissible although not conclusive in products liability case); *Brech* v. *J.C. Penney Co.*, 698 F.2d 332, 334 (8th Cir. 1983) (that garment surpassed Federal flammability standards evidence as to unreasonable dangerousness, although not conclusive); *Howard* v. *McCrory Corp.*, 601 F.2d 133, 138 n.9 (4th Cir. 1979) (same); *Simien* v. *S.S. Kresge Co.*, 566 F.2d 551, 557 (5th Cir. 1978) (same); *Raymond* v. *Riegel Textile Corp.*, 484 F.2d 1025, 1027 (1st Cir. 1973) (under New Hampshire law, compliance with Federal flammability standards relevant and admissible but not conclusive as to issue of defectiveness and dangerousness); *Bunn* v. *Caterpillar Tractor Co.*, 415 F. Supp. 286, 292 (W.D. Pa. 1976), aff'd, 556 F.2d 564, cert. denied, 434 U.S. 875 (1977) (Federal regulations relevant and admissible on issue

States have enacted statutes governing the admissibility and effect of government regulations in such cases.[15] We conclude that there is no basis under the law of Massachusetts for the admission of the regulations in question, promulgated after the sale of the UFFI to the plaintiffs, for the purpose for which they were offered, namely, as evidence that the UFFI was unfit for the ordinary purposes for which it was intended.[16]

2. The judge instructed the jury to determine whether the UFFI, at the time of its sale to the plaintiffs, was fit for the ordinary purposes for which it was intended to be used.[17] The first of several special questions submitted for the jury's consideration dealt with whether there had been a breach of the

---

whether design of product unreasonably dangerous); *Blueflame Gas, Inc.* v. *Van Hoose*, 679 P.2d 579, 591-592 (Colo. 1984) (compliance with government regulations constitutes evidence of no defect, although not conclusive); *Rucker* v. *Norfolk & Western Ry.*, 77 Ill.2d 434, 438-439 (1979) (evidence of compliance with Federal standards relevant and admissible on whether product defective and unreasonably dangerous but not conclusive); *Gryc* v. *Dayton-Hudson Corp.*, 297 N.W.2d 727, 734-735 (Minn.), cert. denied sub nom. *Riegel Textile Corp.* v. *Gryc*, 449 U.S. 921 (1980) (compliance with Federal safety standards relevant and admissible on issue of punitive damages but does not preclude them as matter of law); *Cepeda* v. *Cumberland Engr. Co.*, 76 N.J. 152, 192-193 (1978), overruled on other grounds sub nom. *Suter* v. *San Angelo Foundry & Mach. Co.*, 81 N.J. 150 (1979) (government safety codes in existence when product marketed admissible but not conclusive as to defectiveness); *Wilson* v. *Piper Aircraft Corp.*, 282 Or. 61, 64-65 (1977), reh'g denied, 282 Or. 411 (1978) (compliance with government safety standards not complete defense as to defective design).

[15] See, e.g., Ark. Stat. Ann. § 34-2804(a) (Supp. 1983) (compliance with Federal or State statutes or regulations evidence that product was not in unreasonably dangerous condition); Colo. Rev. Stat. § 13-21-403 (1) (b) and (2) (Supp. 1984) (compliance with Federal or State code, standards, or regulations creates rebuttable presumption of nondefect; noncompliance creates rebuttable presumption of defect); Mich. Comp. Laws Ann. § 600.2946(2) (1985 Supp.) (compliance with Federal and State law, rules, and regulations admissible in evidence); Utah Code Ann. § 78-15-6(3) (1977) (compliance with government standards creates rebuttable presumption of nondefect). See also Model Uniform Product Liability Act § 108 (U.S. Dept. of Commerce, Proposed Draft 1979).

[16] It has not been argued to either the Superior Court judge or to this court that the regulations were admissible under the so-called "innominate exception" to the hearsay rule. See *Commonwealth* v. *White*, 370 Mass. 703, 713 (1976).

[17] The record appendix contains only excerpts of the judge's instructions.

warranty of merchantability at the time of sale. The jury interrupted their deliberations to ask the judge the following question:

> "Question number one says, 'at the time of sale.' The Rice case hinges on persistent odor beyond the time of the sale. If we are restricted to the time of the sale, there is no case, true or false?"

During the colloquy between the judge and counsel which followed, plaintiffs' counsel suggested that the judge simply answer the question "false." The judge, believing that some explanation was needed, gave the following answer:

> "Now let me answer it this way. When we're talking, the words, "at the time of the sale," meaning: Was there something about that product, at the time that it was sold, that made it unfit, something inherent in the product, the fact, if it is a fact, that an odor may have existed then or developed at some time later might be evidence of its fitness or unfitness. But that's not really the controlling factor.
> "The question is: At the time that it was sold, was there something inherently wrong with that product such as would render it unfit for installation in a home for insulation purposes. That, I think, is really the way the question should be considered."

At the conclusion of the answer, the judge asked if counsel had "any problem with that," and the plaintiffs' counsel registered no objection. The jury were then discharged for the day. Before the jury renewed deliberations on the next morning, the plaintiffs' counsel again asked the judge to answer the jury's question: "false." The judge reminded counsel that, despite the judge's invitation for comment, he had made no objection to the answer as given. The judge declined to instruct the jury further on the question, saying that to do so would confuse the jury. Giving the plaintiffs the benefit of the doubt

as to the timeliness of counsel's objection, since the jury had not "retire[d] to consider its verdict" following the answer, Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), we conclude that there was no error.

The plaintiffs objected to the judge's answer on the basis that it was confusing. The plaintiffs argue that the judge should have answered the question, "false," with an explanation that a product's unfitness may be established by its long-term effects. We think that the answer, read as a whole, see *Wilson* v. *Boston Redevelopment Authy.*, 366 Mass. 588, 591 (1975), adequately and accurately informed the jury that (1) the critical time, on the evidence presented, of fitness was the time of the sale and (2) contemporaneous or subsequent odor[18] could be considered evidence of unfitness.

3. The plaintiffs argue that defense counsels' closing arguments contained expressions of personal opinion which were improper and prejudicial. As the plaintiffs failed to object to those portions of the arguments, we decline to review the matter. See *Commonwealth* v. *Johnson*, 374 Mass. 453, 458 (1978); *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 666 n.3 (1980).

4. The plaintiffs present nothing in their arguments of error in the denial of their motion for a new trial which we have not addressed. There was no abuse of discretion in the denial.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[18] The plaintiffs alleged that after installation the UFFI emitted an acrid odor.