McHugh, J.
I.BACKGROUND
At bottom, this case involves a dispute between an insured and several insurers concerning the latter’s responsibiliiy for payment of various charges assessed against the former in connection with the clean-up of a hazardous waste site. One insurer, American Policy Holders Insurance Company (“API”), commenced this action against the insured, Nyacol Products, Inc. (“Nyacol”). Nyacol in turn, impleaded two other insurers, Commercial Union Insurance Company (“Commercial”) and Utica Mutual Insurance Company (“Utica”).
After the pleadings were completed, API filed a motion for partial summary judgment in which the other insurers joined. In connection with that motion, API filed the affidavit of Jennifer S. D. Roberts (“Roberts”), one of API’s lawyers. Appended to Roberts’ affidavit is a so-called “Record of Decision” (“ROD”) for the Nyanza Chemical Waste Dump Superfund Site prepared by the United States Environmental Protection Agency (“EPA”). Claiming that the ROD and the documents on which it is based are hearsay, Nyacol has moved that they be stricken. See generally Mass.R.Civ.P. 56(e); Madsen v. Erwin, 395 Mass. 715, 719-21 (1985).[1]
II.FACTS
Factually, the site at issue in this case is located in Ashland, Massachusetts. Apparently, a number of different companies produced textile dyes and other like materials at the site from 1917 until 1977. The EPA and the Commonwealth’s Department of Environmental Protection (“DEP”) (formerly known as the Department of Environmental Quality Engineering or “DEQE”) began investigating the site beginning in the mid-1960’s. In 1981, the EPA apparently added the site to what was known as the National Priorities List pursuant to §105 of the Comprehensive Environmental Response and Liability Act of 1980, 42 U.S.C. §9605.
Section 113(k) of that statute, 42 U.S.C. §9613(k), as amended, requires the EPA to establish an administrative record upon which the Agency then is required to base its selection of the appropriate “response action," i.e., a method used to “remediate” or clean up the toxic materials it has found on the site. See 40 C.F.R. §§300.430(f)(l)(ii), 300.430(f)(4)(i). The ROD is that administrative record.
The ROD consists of a number of different components. First is a four-page recitation of the documents that the EPA’s regional administrator reviewed in reaching his decision as to the appropriate remediation effort coupled with a description of that effort and a certification that it was cost effective and otherwise consistent with the statutory mandate. Next is a 34 page text, evidently written by EPA staff[2] discussing the site, its location, description, history and current status, enforcement efforts that have been taken with respect to the site and a number of other related topics. Charts and tables, some prepared by the EPA and some prepared by others, then follow.
One of the documents included in the ROD after the 34 page EPA text is a 40 page document entitled “Nyanza, Chemical Waste Dump . . . Preliminary Site Assessment Report” prepared by the DEQE on October 23, 1980. That document, too, contains a proposed “clean-up plan” and a variety of historical materials gathered and obtained during the course of DEQE’s investigation. Attached and appended to the DEQE report are a series of appendices, some of which are in handwriting, some of which are drawings containing notes, some of which are memoranda, some of which are proposed regulations, some of which are the result of scientific analysis or tests and some of which are inventory lists of one type or another.
API and the other insurers contend that the ROD, in its entirety, is admissible under the “Official Record” exception to the hearsay rule. That exception has two, and perhaps three, variants. First is the exception in its common-law form. Second is the exception in the form embodied in Proposed Mass. R. Evid. 803(8) as heretofore interpreted. Third is the exception embodied in Proposed Rule 803(8) as interpreted in light of federal cases interpreting a similar federal rule. Although the third of those variants would permit introduction of the ROD, I am of the opinion that current Massachusetts law does not.
III.DISCUSSION
The common-law exception provides that “an official record of a primary fact made by a public officer *308 in the performance of official duty may be introduced in evidence as proof of the facts recorded.” P. Liacos, Handbook of Massachusetts Evidence 504 (6th ed. 1994). “ ‘Primary fact’ is not a self-defining phrase, but at least it connotes facts which can be recorded without recourse to discretion and judgment, e.g., the fire alarm sounded at 10:30 P.M.; it was raining lightly at the time of the accident; the child was placed with Mr. and Mrs. Doe for foster care on January 29, 1989.” Adoption of George, 27 Mass.App.Ct. 265, 274 (1989). Moreover, the record is inadmissible unless the official who made it had a duty to make records of that kind. Amory v. Commonwealth, 321 Mass. 240, 252-53 (1947); Kelly v. O’Neil, 1 Mass.App.Ct. 313, 317-19 (1973).
Here, even assuming that governing statutes required both the DEQE and the EPA to create records of the type the ROD embodies,[3] the ROD itself is in large part normative, evaluative and judgmental. It is not a straightforward, simple recitation of primary fact. Moreover, even the “primary facts” the ROD contains are manifestly based on hearsay that does not itself fall within the official record, or any other, exception to the hearsay rule. Most of the documents appended to the ROD are undeniably not within the official record or any other exception of the hearsay rule. Indeed, neither party has cited a case suggesting that the appended documents obtain some admissible shelter from the mere fact that they were appended to the ROD.
The question then becomes whether the ROD is admissible under Proposed Rule 803(8). Although the Proposed Rules have not been adopted in full, the Supreme Judicial Court has urged that judges and justices of the trial court look at those rules on a case-by-case basis with an eye toward determining whether they should be adopted as part of the Commonwealth’s common law of evidence. See, e.g., Commonwealth v. Daye, 393 Mass. 55, 66 (1984).
Proposed Rule 803(8) makes admissible three categories of documents, i.e.:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report... or (C) in civil actions and proceedings . .. factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
Noteworthy at the outset is that none of the three “public record” categories set out in Proposed Rule 803(8) would support the admission of the material in the ROD that was not prepared either by the EPA or by the DEQE, i.e., the background materials included in the ROD on which both agencies relied for the portions of the report they authored.
Even as to the portions the agencies wrote, however, I am of the opinion that Proposed Rule 803(8) does not provide for admission. The EPA and DEQE report surely set out more than the “activities of the office or agency,” and they surely set out more than matters the two agencies “observed.”[4]
Both the portion of the report prepared by the DEQE and the portion prepared by the EPA do, it is true, contain “findings” and there can be little doubt that those findings “result[ed] from an investigation made pursuant to authority granted by law.” The Advisory Committee note to Proposed Rule 803(8), however, states that 803(8)(C), the Rule’s third segment, “appears to reflect Massachusetts case law with respect to factual findings vis a vis evaluative reports (although questions of the distinction between fact and opinion may persist). See Commonwealth v. Slavski 245 Mass. 405, 416 (1923).” The portion of Slavski referred to in the Advisory Committee note discusses the difference between statutes permitting introduction of what may be called “primary” facts and cases excluding “facts” reflecting an exercise of judgment or opinion. Summing up that distinction, Slavski states as follows:
. . . [t]he principle which seems fairly deducible from [those cases and statutes] is that a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent prima facie evidence as to the existence of that fact’ but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records.
Id. at 417.
Although the Advisory Committee’s note, considered by itself, can be interpreted several different ways, the Appeals Court has ruled that, chiefly because of the note, Proposed Rule 803(A)(C) does not change Massachusetts law and thus continues “to exclude evaluative reports.” Rice v. James Hanrahan & Sons, 20 Mass.App.Ct. 701, 706-07 n. 11 (1985). Accord, Adoption of George, 27 Mass. App. Ct. 265, 273-74 (1989).[5]
The EPA-authored portion of the ROD is heavily judgmental. By way of example, the EPA report states that “[i]t is suspected that buried lagoons in the Hill area may have been used as leeching pits for organics at one time,” Report at 8, “[t]he existing data suggests that heavy metals in the sludges are leaching to groundwater but to a very limited extent. This is probably due to the fact that portions of the Hill and wetland sludge deposits are below the seasonal high groundwater table,” id. at 8-9, and “[t]he available data suggest that the organic contamination resulted primarily from direct discharge from wastes to the *309 groundwater . . .” Id. at 9. See also, e.g., id. at 3, 5, 6, 8, 18 and 26. Likewise, the PSAR authored by the DEQE contains similar statements, e.g., “[i]t appears that when the company could not get rid of those materials it discarded them,” and “[i]t was estimated by a former official that at least 5,000 lbs. per year of waste were generated [through disposal in a sewer and burial in 55 gallon drums]. This leads to an estimate of 10 drums per year or 600 over the life of this site.” PSAR at 23. By way of another example, there is this:
The wastes were usually placed in 55 gallon drums and buried on site. It was estimated by a former plant official that 5 to 10 drums per month were generated in this manner. If this is accurate it translates to approximately 100 drums per year or about 6,000 drums during the sixty years of operation. Suspected disposal areas of these and other drums of waste are shown in figure 9.
PSAR at 22. See also, e.g., Id. at 20, 22, 23, 33, 35, 36 and 39.
The heavily opinionated and judgmental nature of the “findings” contained in the Reports authored by the EPA and by the DEQE mean, in my judgment, that neither is admissible under Proposed Rule 803(8)(C).[6]
That leaves the federal rule and interpretations thereof.[7] In Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), the Supreme Court of the United States held that “statements in the form of opinions or conclusions are not by that fact excluded from the scope of . . . Rule . . . 803(8)(C).” Id. at 175. The test articulated by the Court for admissibility under Rule 803(8)(C) was two-fold: “As long as the conclusion is based on a factual investigation and satisfies the Rule’s trustworthiness requirement it should be admissible along with other portions of the report.” Id. at 170. Nevertheless, under federal practice, the question of admissibility calls for an exercise of discretion based on both the “finding” itself and the basis on which it rests. See, e.g., Smith v. Massachusetts Institute of Technology, 877 F.2d 1106, 1112-13 (1st Cir. 1989). See generally, Lubanski v. Coleco Industries, Inc., 929 F. 2d 42, 44-45 (1st Cir. 1991); McKinnon v. Skill Corp., 638 F.2d 270, 278 (1st Cir. 1981).
Decided federal cases suggest that reports like the ROD have been admitted in many environmental cases, see United States v. Davis, 826 F. Supp. 617, 621 & n.18 (D.R.I. 1993), after rejection by the admitting courts of claims that considerations like those recited above make the reports “untrustworthy.” In an era when scientific knowledge produces increasingly complex “factual” judgments and in an area where the “basic” facts necessary to make “ultimate” factual findings are as diverse, extended and difficult to obtain as they often are in environmental pollution cases, the process of judicial factfinding may, as a practical matter, prove enormously difficult unless reports like the ROD are considered trustworthy enough for admission.[8]
Nevertheless, there is, in my view, a significant difference between the current reach of Proposed Rule 803(8) (C) and the reach of the cognate federal rule. See Rice v. James Hanrahan & Sons, supra, 20 Mass. App. at 706-07 n.ll (1985). I am unpersuaded that the federal model should be adopted here, at least at the summary judgment stage, where none of the ROD’S “findings” would be subject to cross-examination.[9] To admit documents of this type would be to obliterate any meaningful distinction between facts and conclusions, would as a practical matter do away with the rules against admission of “totem-pole” hearsay whenever the public official relied on the hearsay for some judgment or conclusion and would eliminate the requirement that opinions and conclusions be formed to a reasonable degree of certainty before their submission to a judicial factfinder. That is far more than I am persuaded the Advisory Committee thought it was doing when it adopted Proposed Rule 803(8)(C). I find no suggestion in decided cases that our appellate courts are now prepared to embrace such a broad departure from current law.
IV. ORDER
In light of the foregoing, it is hereby ORDERED that defendants motion to strike the affidavit of Jennifer S. D. Roberts should be, and it hereby is, ALLOWED. The affidavit-will not be physically stricken from the docket of the court, however, but may not be relied upon during the course of the hearings on the plaintiffs’ motion for summary judgment.

There is no question as to the ROD’S authenticity or genuineness.

No one suggests otherwise and I assume, therefore, that the EPA prepared that part of the document.

Nile current statute governing such matters is permissive, not mandatory. G.L.c. 2 IE, §5A. Under current Massachusetts law, it is the requirement to create a report of the type one seeks to admit, not the requirement to do the acts recited in the report, that makes the report admissible. See Amory v. Commonwealth, 321 Mass. 240, 252 (1947).

Even as to those matters actually “observed” by tracking the common law Proposed Rule 803(8) (B) requires that the act of reporting be undertaken pursuant to a “duty” to report and not a discretionary election to do so. See Amory v. Commonwealth, 321 Mass. 240, 252 (1947). Here, although both the EPA and the DEQE had the power to make reports of the type at issue, there is no suggestion that everything even in the portions the agencies wrote is material they were required to report.

At least in the Probate context, the Appeals Court has created some leeway for admission of evaluative or normative findings if the person who made them is available for cross-examination. Adoption of Kenneth, 31 Mass.App.Ct. 946, 947 (1991); Custody of Michel 28 Mass.App.Ct. 260, 265-66 (1990). That exception has been made, however, in the context of proceedings designed to determine the “fitness” of the birth parent or parents, itself an inherently normative judgment. Here, the object of the inquiry, whether there was a “sudden and accidental” discharge of pollutants, although no less complicated, is far less judgmental. Moreover, and ultimately more important, in the context of the present motion for summary judgment, there is no opportunity for anyone to cross-examine anyone about anything. Thus, if admitted, the *310 normative and evaluative judgments in the EPA and DEQE-authored portions of the ROD would be unsoftened by any explanatory cross-examination even if the authors of the reports could, at this date, be found.

As plaintiffs suggest, admission or rejection of the ROD is not, necessarily and inherently an all-or-nothing proposition. Nevertheless, I am unable on my own to weave in and out of the judgmental and evaluative portions of the ROD with sufficient precision to allow admission of portions of the document that would be admissible.

Obviously, the federal rule is not binding on this court. Analogous federal rules, however, often provide models for interpretation, or expanding interpretation, of cognate state rules, see, e.g., Rollins Environmental Services, Inc. v. Superior Court, 368 Mass. 174, 179-80 (1975), and cannot be ignored simply because they are not home grown.

Considerations like those gave rise to the “innominate” exceptions to the hearsay rule embodied in Fed.R.Evid. 803(24) and 804(b)(5). The “innominate” exception, however, has been expressly rejected in Massachusetts. Commonwealth v. Costello, 411 Mass. 371, 377 (1991).

See n. 5, supra. Conceivably, through presentation of witnesses at depositions or at trial, concerns about the ROD’S “trustworthiness" can be reduced. See, e.g., United States v. Tyson, 1986 WL 9250, at *8 (No. 84-2663) (E.D. Pa. Aug. 22, 1986). If so, the ROD, or portions thereof, may be tendered anew.