Rup, J.
Janine McGahan (“McGahan”) filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) alleging discrimination and retaliation by her former employer, Kimball, Bennett, Brooslin and Pava (“Kimball Bennett”). After hearing, the MCAD hearing officer found in McGahan’s favor and awarded damages. The Full Commission affirmed the hearing officer’s decision. Thereafter, Kimball Bennett filed the instant suit seeking, inter alia, a jury trial on McGahan’s claims.[2] See Lavelle v. Massachusetts *563 Commission Against Discrimination, 426 Mass. 332 (1997).
After jury trial, a verdict entered in Kimball Bennett’s favor. McGahan timely filed the instant motion for judgment withstanding the verdict and, alternatively, for a new trial.[3] After hearing, and in consideration of the submissions of the parties, this motion is denied for the reasons set forth below.
BACKGROUND
The following evidence was introduced at trial.
At the time of trial, J anine McGahan was fifty-seven years old and had suffered from asthma since approximately age ten. She took medication for her condition.
In the 1990s, McGahan contracted with Kelly Services which assigned her to different work sites as a “temporaiy” employee providing secretarial services.
In February 1993, Kelly Services assigned her to the law firm of Kimball, Bennett, Brooslin and Pava. The law firm employed five attorneys, all of whom were related by birth or marriage. At that time, Kimball Bennett also employed four secretaries, a receptionist, a part-time title researcher and a part-time bookkeeper, most of whom were family members. Support staff worked at desks in the center of the office space, ringed by the attorneys’ offices, which had windows opening to the outside.
McGahan worked as a legal secretary, primarily for Attorney Jeffrey Kimball. She performed her job responsibilities well and, in late June or early July 1993, Attorney Kimball offered regular employment to her.
Attorney Kimball testified that he advised McG-ahan, during their initial interview, that the law firm permitted smoking by its clients and staff and that the attorneys and certain staff members smoked cigarettes, cigars or pipes in the office. He also testified that she responded that smoking did not bother her and she had smoked in the past. During trial McG-ahan testified that she tolerated the smoke in the office until she began experiencing breathing problems in September or October 1993. She increased her medications and did not complain. However, on November 29, 1993, McGahan experienced significant difficulty with her breathing and found her medication ineffective. She advised Attorney Kimball and other staff of her condition. After Attorney Kimball assisted her and recommended that she see a doctor, McGahan left work. During a medical examination later that day, Doctor Barry Elson prescribed medication and advised McGahan to take time off from work. At a follow-up visit the next week, Dr. Elson instructed McGahan that she should not work in a smoky environment and gave her a letter, dated December 2, 1993, expressing his concern “about the possible impact of secondhand smoke and allegedly inadequate ventilation upon her symptoms,” and recommending that she “temporarily refrain from entering the workplace until her medical condition stabilize(d) and until such time that she [could] be free from asthma and headaches while there.”[4] Kimball Bennett filed a report of injury with its workers’ compensation carrier and for a period of time thereafter McGahan received workers’ compensation benefits. At about that time, she engaged an attorney to represent her.
On January 6, 1994, McGahan filed a complaint with the MCAD alleging that Kimball Bennett had discriminated against her on the basis of her disability (asthma). Thereafter, all discussions regarding McGahan’s employment took place between her attorney and the attorney engaged to represent Kimball Bennett. On January 18, 1994, Kimball Bennett’s attorney sent to McGahan’s attorney a letter which stated, in part: “Your client is welcome to return to work on January 19, 1994.” McGahan returned to work at the law firm on January 19th, but left after one hour and never returned.
The MCAD issued a “probable cause” finding on January 13, 1997. After a public hearing, the MCAD hearing officer issued a decision in McGahan’s favor on December 13, 1999. The hearing officer found that Kimball Bennett constructively discharged McGahan by refusing to reasonably accommodate her disability, and awarded her damages in the amounts of $15,199.37 for lost wages and $50,000.00 for emotional distress. Kimball Bennett appealed to the Full Commission, which affirmed the hearing officer’s decision on December 19, 2000.
Kimball Bennett filed the instant action on January 11, 2001.[5] In Count I of its complaint, it sought ajury trial on the claims heard by the MCAD. See Lavelle, 426 Mass. at 338.[6]
The subsequent trial before a jury resulted in verdicts in favor of Kimball Bennett.[7] McGahan timely filed a motion for judgment notwithstanding the verdict and, alternatively for a new trial. Mass.R.Civ.P. 50(b), 59.
DISCUSSION
I. Motion for Judgment Notwithstanding the Verdict
McGahan unsuccessfully moved for directed verdict at the close of all the evidence. Her present motion, which raises the same grounds, is denied for the following reasons.
A. Liability
McGahan argues that the court should have directed a verdict in her favor on the basis of liability because the evidence established that she was a qualified handicapped individual to whom Kimball Bennett had denied reasonable accommodation. She states that her accommodation request was reasonable: that people not smoke in the common areas and where she worked. She asserts that Dr. Roy Stillerman, Kimball Bennett’s expert witness, testified that she made a reasonable accommodation request. She also claims that Kimball Bennett “presented no evidence that their *564 suggested ‘accommodation’ could answer any of [her] medical needs.” However, the jury also heard the following evidence. Some time after November 29th and before January 19th, Kimball Bennett purchased a HEPA air purifier for McGahan’s work area and arranged with the landlord to operate the heat, ventilation and air conditioning system to allow for continual air circulation during the work day. Both systems were in place and operational before January 19th. On January 19th, McGahan returned to Kimball Bennett and found the air quality in the office to be not “too bad.” Attorney Kimball came into her work area smoking. McGahan told Attorney Kimball and then Attorney Bennett that the condition of her return to work was that there be no smoking in the office; Attorney Bennett advised her that no one in the law firm had made that commitment. McGahan testified that she left Kimball Bennett’s offices at 10:00 a.m. on January 19th because she had no work on her desk and support staff would not speak with her; however, Attorney Kimball testified that McGahan’s work had been left in the library, as in the past. From that and other evidence, a reasonable jury could have concluded that Kimball Bennett provided a reasonable alternative accommodation (a HEPA air purifier for her desk and continual air circulation in the office) and that McGahan made no effort to determine whether the accommodation would adequately address her health concerns.
B. Grounds as Set Forth in Summary Judgment Motion
Some months before trial, McGahan filed a motion for summary judgment which the court (Constance M. Sweeney, J.) denied. In her motion for directed verdict and the present motion, McGahan argues the same grounds.
Judge Sweeney’s decision denying summary judgment correctly addressed each of McGahan’s present arguments. Kimball Bennett, as the respondent in the MCAD action, had a constitutional right to a jury trial because McGahan sought and obtained more than “traditional equitable relief.” See Lavelle, 426 Mass. at 337-38. Kimball Bennett asserted its right to trial by jury once it attached: after the commission’s final action (the December 19, 2000 decision of the Full Commission) which included a grant exceeding traditional equitable relief (an award for emotional distress damages). Id. at 338. Kimball Bennett timely filed its complaint on January 11, 2001, within 30 days after the decision of the Full Commission.
II. Motion for New Trial
McGahan has moved for a new trial claiming that: (1) the jury heard prejudicial and irrelevant evidence regarding McGahan’s employment at Springfield College as well as medical evidence that smoke may not have been not the sole cause of her symptoms; (2) Kimball Bennett’s counsel improperly cross-examined McGahan despite a pre-trial ruling excluding evidence regarding payment of workers’ compensation benefits; (3) the court erroneously failed to instruct the jury that an employer must engage in an interactive process with an employee regarding accommodations; and (4) the court erred by excluding evidence of the MCAD decision, which she claims should have had prima facie effect.
A. Admission of Evidence of Other Potential Causes of McGahan’s Condition
Prior to trial, McGahan filed a motion in limine which, inter alia, sought to exclude evidence regarding subsequent employment at Springfield College. With regard to her Springfield College employment, the motion was denied. She now argues that the court erroneously permitted admission of evidence regarding health problems she encountered during her post-Kimball Bennett employment at locations including Springfield College. She also argues that the court erroneously allowed the jury to hear the expert opinion of Dr. Roy Stillerman that smoke may not have been the sole cause of her symptoms. McGahan claims that this evidence was irrelevant and suggested to the juiy that “the issue in the case was whether tobacco smoke was the sole cause of [her] problems.”
This evidence was relevant on the issue of whether McGahan was a handicapped person, an element of her claim. See G.L.c. 151B, §§1(19), 4. While McGahan claims that this evidence prejudiced her position, it also tended to corroborate her claim that her asthmatic condition was exacerbated by workplace conditions. The jurors were instructed that while McGahan had to prove she suffered from a handicap, she did not have to prove the cause of her condition. Furthermore, admission of this evidence did not prejudice McGahan as the jury found that she was a qualified handicapped person capable of performing the job with reasonable accommodation.
B. Improper Cross-Examination Regarding Workers’ Compensation Benefits
McGahan’s motion in limine also sought to exclude evidence regarding a workers’ compensation claim she filed while employed at Springfield College. That portion of her motion was allowed.
During trial, the jurors heard evidence that McG-ahan received workers’ compensation benefits during her medical absence from Kimball Bennett. That evidence was relevant on several grounds. It tended to support Kimball Bennett’s proffered reason for urging McGahan not to return to the workplace: so she would not jeopardize the benefits to which she might be entitled. It was also relevant on the issue of mitigation of damages.[8]
Counsel for Kimball Bennett cross-examined McG-ahan at length on a number of issues unrelated to her employment at Springfield College. He vigorously questioned her about health problems she suffered while working at the college. McGahan has failed to *565 demonstrate how fleeting mention of any claim for unemployment benefits because renovations at the college caused her to suffer breathing problems unfairly prejudiced her. Furthermore, the jurors were instructed not to reduce any award of damages because McGahan might have received workers’ compensation or unemployment benefits. Again, the jurors found that McGahan was a qualified handicapped employee who, with reasonable accommodation, could have performed her job. She has failed to demonstrate how admission of this evidence unfairly affected the jurors’ decision as to whether Kimball Bennett constructively discharged her by failing to offer a reasonable accommodation.
C. Failure to Instruct on Employer’s Obligation to Engage in Interactive Process on Accommodations
McGahan argues that the court erred by failing to instruct the jury that an employer has an obligation to engage in an interactive process with a handicapped employee regarding accommodations. She claims that the court’s instruction that an employer need not provide the best accommodation could have left the juiy to misunderstand that any accommodation chosen by an employer is adequate. McGahan cites two cases as authority for her position: Phelps v. Optima Health, 251 F.3d 21 (1st Cir. 2001), and Barnett v. U.S. Air Inc., 228 F.3d 1106, 111-14 (9th Cir. 2000). In those cases, the court cited an EEOC regulation which provides, in pertinent part that: “to determine an appropriate reasonable accommodation it maybe necessary for the [employer] to initiate an informal, interactive process with the qualified individual . . .” 29 C.F.R. §1630.2(o)(l)(iii).
The juiy was instructed that an employer is obliged to provide a “reasonable” accommodation that will enable the employee to perform the job. The Massachusetts anti-discrimination law does not require that an employer negotiate the accommodation with the employee. Here, there was no evidence offered as to the substance of the discussions between counsel for McGahan and Kimball Bennett regarding possible accommodations prior to McGahan’s January 19th return to the law firm. The evidence showed that Kimball Bennett had purchased an air purifier for McGahan’s work area and persuaded its landlord to operate the air conditioner to improve air circulation in the office. McGahan testified that she expected that there would be no smoking in her work area, but introduced no evidence that, prior to January 19th, Kimball Bennett or its attorney had specifically agreed to that accommodation. Within one hour of her return, and dissatisfied with the reaction of Attorneys Kimball and Bennett to her statement that she expected no smoking in her work area, McGahan left the law firm. She offered no evidence that the accommodation offered by Kimball Bennett was ineffective or unreasonable. She is not entitled to a new trial on this ground.
D. Exclusion of the MCAD Decision
Before trial, Kimball Bennett successfully moved to exclude the MCAD decision which McGahan hoped to introduce during trial.[9] McGahan argued that the decision should be admitted and also given prima facie evidentiary effect[10] In moving for a new trial, she argues that the court erred in excluding the MCAD decision.
1. Admitting and Giving Prima Facie Effect to the MCAD Decision
In Lavelle v. Massachusetts Commission Against Discrimination, 426 Mass. 332 (1997), the Supreme Judicial Court held that respondents, as well as complainants, have aright to elect a judicial determination of claims brought before the MCAD, with a right to juiy trial. Id. at 338. The court determined that the best procedure was to allow respondents to obtain a juiy trial after final action by the MCAD. Id. It declined to anticipate or answer other possible questions regarding that procedure. Id. at 339. McGahan now argues that in cases like the present one, where a respondent seeks a juiy trial after the MCAD issues a final decision, the court should admit the MCAD decision as prima facie evidence during the juiy trial because c. 151B, §9, does not provide for a de novo jury trial. McGahan and the MCAD assert that de novo trials held after final MCAD action would undermine the very existence of the MCAD and its procedures.
The courts have long held that the Massachusetts anti-discrimination law, G.L.c. 151B, provides plaintiffs with two independent avenues for redress of their discrimination claims: “one through the MCAD (G.L.c. 151B, §§5-6), and the other in the courts (G.L.c. 151B, §9).” Brunson v. Wall, 405 Mass. 446, 452 (1989), quoting Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 817 (1988). A complainant who elects to pursue the full administrative process before the MCAD is barred from seeking a de novo civil action in the Superior Court alleging violations of G.L.c. 151B arising from the same factual situation adjudicated by the MCAD. Brunson, supra. at 453. This long-recognized procedure, McGahan argues, supports her position that the MCAD’s decision, after a full adjudication, should be accorded evidentiary weight during a juiy trial requested by a respondent like Kimball Bennett, which had a full and fair opportunity to litigate the same factual issues before the MCAD.
In holding that respondents have a right to obtain a juiy trial “only after that [MCAD] has taken final action,” Lavelle, supra, at 338, the court acknowledged that “practical problems” which might arise with the procedure “must be left to the Legislature.” Id. at 339. Even though, as the MCAD argues, de novo trials may appear to render its adjudicatoiy decisions “meaningless” and be a waste of precious Commonwealth resources, the fact remains that the present legislation makes no provision for introduction of MCAD decisions during trial proceedings.
*566 McGahan also argues that because the MCAD hearing officer conducted a full public hearing before issuing the decision, the court should permit introduction of the decision (and the Full Commission’s affirmance) as prima facie evidence during a subsequent jury trial, similar to the procedures followed when a party seeks a jury trial in the Superior Court following trial before a judge of the District Court. See G.L.c. 231, §§104 and 102C. See also, Forrey v. Dedham Taxi, Inc., 19 Mass.App.Ct. 955 (1985) (decision of the District Court becomes prima facie evidence upon such matters as are put in issue by the pleadings, unless rebutted by evidence to the contrary). District Court decisions merit the status of prima facie evidence as part of the comprehensive statutory scheme of appellate relief for certain civil actions commenced or tried in the District Courts. However, the Legislature has not accorded that evidentiary status to other similar proceedings. As an example, prima facie evidentiary status does not apply to appeals to the Superior Court of District Court judgments in civil cases for which removal procedures were unavailable. See G.L.c 231, §97 (“The case shall be entered in the superior court. . . and shall be there tried and determined as if originally entered therein”). The Legislature has not provided for evidentiary admission of District Court decisions in summary process appeals, which the Superior Court hears de novo. See G.L.c. 239, §3; G.L.c. 231, §97. For appeals of decisions of zoning boards of appeal, the courts hear the matters de novo and make their own findings of fact. See Bicknell Realty Co. v. Board of Appeal of Boston, 330 Mass. 676, 679 (1953); G.L.c. 40A, §17. One cannot fairly interpret the Massachusetts anti-discrimination statute, G.L.c. 15IB, as showing an intent by the Legislature that the courts admit and accord prima facie eviden-tiary weight to MCAD decisions during jury trials sought by respondents.
Furthermore, administrative proceedings such as those before the MCAD take place without the benefit of formal judicial proceedings or evidentiary rules. MCAD’s regulations provide that the “Commission shall not be bound by the rules of evidence observed by courts except for the rules of privilege.” 804 Code Mass.Regs. §1.15(14) (1986). The Commission is only required to follow Massachusetts rules of evidence “so far as practicable.” Id. See also School Committee of Brockton v. MCAD, 423 Mass. 7 (1996) (hearsay evidence can be received in MCAD proceedings). The Massachusetts courts recognize that the informal findings of an administrative agency differ from a decision by a District Court judge. See Dolphino Corporation v. Alcoholic Beverages Commission, 29 Mass.App.Ct. 954, 955 (1990). “As a general rule, the concept of a hearing de novo precludes giving evidentiary weight to the findings of the tribunal from whose decision an appeal was claimed.” Id., citing Devine v. Zoning Bd. Of Appeals of Lynn, 332 Mass. 319, 321 (1955); Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972).
2. Admission of EEOC Decisions in Federal Court Trials
McGahan argues that the state courts should follow the federal court practice of allowing admission of EEOC decisions in employment discrimination trials. Her argument is not persuasive.
It appears that the Circuit Courts have not agreed on the admissibility of EEOC decisions during trials.[11] The First Circuit’s position is set forth in Smith v. Massachusetts Institute of Technology, 877 F.2d 1106 (1st Cir. 1989), where the court declined to establish a rule that EEOC reports and findings are per se admissible, and left it to the trial court to determine, in its discretion, whether that such decisions are sufficiently trustworthy. Smith at 1113 (“A rule of per se admissibility of the investigative file would clearly undercut the district court’s function as independent fact-finder. The better approach is to permit the District Court to determine, on a case-by-case basis, what, if any, EEOC investigator materials should be admitted at trial.”), citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167-68 (1988). See also Hilton v. Wyman-Gordon Co., 624 F.2d 379, 383 (1st Cir. 1980) (“[A]s this case makes abundantly clear, while EEOC findings in general may be significant evidence, their probative force in individual cases varies considerably and is left to the determination of the trial court”).
Furthermore, the EEOC and the MCAD differ with respect to the powers granted to each agency. The MCAD is “expressly authorized ... to interpret and implement the provisions of the Massachusetts anti-discrimination statute,” while “Congress has not granted to the EEOC the authority to issue regulations interpreting or implementing the generally applicable provisions of the ADA.” Dahill v. Police Dept. of Boston, 434 Mass. 233, 242 (2001). As the Supreme Judicial Court Has noted, “(i]n construing G.L.c. 15 IB, [the Massachusetts courts] frequently do not follow the reasoning of Federal appellate decisions applying Title VII.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521 (2001). That some federal courts have permitted introduction of EEOC reports during trials does not support introduction of MCAD decisions as prima facie evidence during a state court trial.
3. Proposed Massachusetts Rule of Evidence 803(8)
McGahan also argues that Proposed Massachusetts Rule of Evidence 803(8) provides support for admission of the MCAD decision.
In pertinent part, the rule permits admission of “[r]ecords, reports, statements, or data compilations, in any form, of public officers or agencies, ... in civil actions and proceedings .. . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or *567 other circumstances indicate lack of trustworthiness.” Proposed Massachusetts Rule of Evidence 803(8) (C). However, notes by the Advisory Committee state that Proposed Rule 803(8) (C) “appears to reflect Massachusetts case law with respect to factual findings vis a vis evaluative reports (although questions of the distinction between fact and opinion may persist).” The notes cite Commonwealth v. Slavski, 245 Mass. 405 (1923), in which the Supreme Judicial Court recognized as a principle of the law of evidence that, “a record of a primary fact made by a public officer in the performance of official duty is or may be made by legislation competent prima facie evidence as to the existence of that fact, but. .. records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records.” Slavski at 417 (emphasis supplied).[12] The proposed rule does not support admission of the MCAD decision.
4. Admissibility of Master’s Reports
McGahan and the MCAD cite, as analogous support for their position, the admissibility of master’s reports in jury trials as “prima facie evidence of the matters found” on issues submitted to the master. Mass.R.Civ.P. 53(i)(l). The argument is not persuasive.
Procedures relating to the appointment and powers of masters are set forth in significant detail in the Rules of Civil Procedure. Masters must be members in good standing of the bar of one of the United States or of the District of Columbia, Mass.R.Civ.P. 53(b)(1), and are appointed by the court to hear evidence in connection with a specific case and to report facts. Mass.R.Civ.P. 53(a)(1). A written order of reference accompanies the appointment, may “specify or limit the master’s powers and may direct [the master] to report only upon particular issues or to do or perform particular acts,” Mass.R.Civ.P. 53(d), and may require a written report with findings of fact and rulings of law. Mass.R.Civ.P. 53(g)(1). The rules of evidence set forth in Mass.R.Civ.P. 43(a), (b), (d) and (g) govern in masters’ hearings. Mass.R.Civ.P. 53(f)(2). The master’s findings may be admitted during a jury trial subject to rulings of the court on properly preserved objections by any party. Mass.R.Civ.P. 53(g)(1).
Masters’ findings are subject to close supervision by the court and an adherence to the rules of evidence. While the MCAD is “a tribunal recognized by law as possessing the right to adjudicate . . . controversies]” and has “the authority to adjudicate discrimination claims,” Brunson, 405 Mass. at 450 (internal citations omitted), the court has no part in proceedings before the MCAD, other than when requested to review the agency’s final decisions, pursuant to G.L.c. 30A, §14.
5. Conclusion
One can see the logic in the arguments set forth by McGahan and the MCAD. Without question, the work and decisions of the MCAD have great importance and are entitled to deference. As the courts have long recognized, “the Legislature specifically provided in §9 of c. 15 IB that the [Commonwealth’s anti-discrimination] statute is to be liberally construed to meet its goals . . .’’ Katz v. Massachusetts Commission Against Discrimination, 365 Mass. 357, 366 (1974). Nonetheless, despite McGahan’s and the MCAD’s assertion that it is both inefficient and unfair to keep evidence of the MCAD decision from the jury, nothing in c. 151B signals any intent by the Legislature to bestow upon the agency’s final decision prima facie evidentiary effect at trial. It may be that this omission resulted from the Legislature not having anticipated that respondents would one day seek to have complaints against them decided by a jury. As the Supreme Judicial Court acknowledged, allowing respondents to obtain jury trial after full hearings and final action by the MCAD may “giveD certain respondents two chances to prevail, before the commission and then the court, while a complainant unsuccessful before the commission may not proceed to court for a new hearing (G.L.c. 151B, §9, first par.), but may seek judicial review only on the agency record (G.L.c. 151B, §6).” Lavelle, supra at 338. It is for the Legislature to resolve any inequity in the process. See id. at 339.
ORDER
For the reasons set forth above, it is hereby ORDERED that the Defendant’s Motion for Judgment Notwithstanding the Verdict and in the Alternative for a New Trial be DENIED.

At the time of trial, McGahan and Kimball Bennett agreed that despite the procedural posture of the filing (with Kimball Bennett named as plaintiff and McGahan named as defendant), McGahan still had the burden of proving her claims.

Kimball Bennett and McGahan were the sole parties before the court on the jury trial claim. After trial, Kimball Bennett filed a notice of voluntary dismissal as to its claim against the MCAD for review pursuant to G.L.c. 30A, §14. By agreement of the parties, the Massachusetts Commission Against Discrimination was allowed to intervene after hearing on the instant motion.

The letter, addressed “(t]o whom it may concern,” was admitted during trial not for the truth of its contents but as evidence of notice to Kimball Bennett of McGahan’s claim and request for accommodation.

Kimball Bennett filed an amended complaint on February 21, 2001.

As an alternative remedy in the event that the court did not grant a jury trial, Kimball Bennett sought judicial review of the MCAD decision in Count II. See G.L.c. 151B, §6; G.L.c. 3QA, §14. At trial, Kimball Bennett proceeded only on Count I. Following entry of judgment in its favor, Kimball Bennett filed a notice of voluntary dismissal, pursuant to Mass.R.Civ.P. 41(a)(l)(i), as to the MCAD.

The jury responded “no” to the special verdict question: “Has Ms. McGahan proved to a preponderance of the evidence *568 that the law firm failed to make reasonable accommodations and constructively discharged her?” The jury also responded “no” to the special verdict question which asked: “Has Janine McGahan proved to a preponderance of the evidence that the law firm retaliated against her because she filed a complaint with the Massachusetts Commission Against Discrimination?”

During direct examination, McGahan testified that she received unemployment benefits after leaving Kimball Bennett.

Kimball Bennett filed a motion in limine to exclude the MCAD findings at trial. McGahan moved in limine to introduce the MCAD findings “as proof of employee’s prima facie case.”

McGahan did not request that factual findings of the MCAD be admitted. Instead, she moved that the agency’s decision be admitted and given prima facie effect.

 This disagreement is described at length in Barfield v. Orange County, 911 F.2d 644, 649 (11th Cir. 1990). The Eleventh Circuit writes, “Our sister circuits are split on the proper method for determining whether an EEOC report will be admissible in an employment discrimination case tried to a jury. The Ninth Circuit appears to have adopted a per se rule that ‘a plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before ajudge or jury.’ Plummer v. Western Int'l. Hotels Co., 656 F.2d 502, 505 (9th Cir. 1981) (emphasis added); but cf. Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1500 (9th Cir. 1986) (admission of EEOC age discrimination letter of violation within discretion of trial judge). The Fifth Circuit approaches that position . . . but reserving the possibility that an EEOC determination could be excluded if ‘the sources of information or other circumstances indicate lack of trustworthiness,’ the specific grounds provided in Rule 803(8)(C). McClure v. Mexia Indep. School Dist., 750 F.2d 396, 400 (5th Cir. 1985). Other circuits, recognizing that ‘EEOC reports are not homogeneous products; they vary greatly in quality and factual detail,’ Johnson v. Yellow Freight System, 734 F.2d 1304, 1309 (8th Cir.), cert denied, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984), have decided that the decision whether to admit EEOC probable cause determinations in a jury trial is within the discretion of the trial judge. See id.; Walton v. Eaton Corp., 563 F.2d 66, 74-75 (3d Cir. 1977); Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15 (4th Cir. 1972).”

Although the language of Massachusetts’ Proposed Rule 803(8) tracks the language of the analogous federal rule, judicial interpretation of the two rules differs. Massachusetts courts follow a narrower interpretation, and it appears likely that Massachusetts courts would exclude reports which are admissible in federal proceedings. See, e.g., Rice v. James Hanrahan & Sons, 20 Mass.App.Ct. 701, 706-07 n.11 (1985) (contrasting federal courts’ liberal construction of Rule 803(8) to the narrower Massachusetts interpretation); Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 792 (1996) (“[Ejven though the language of the proposed rule [803(8)] is identical to that in the Federal rule, Massachusetts has declined to follow the more liberal Federal interpretation embraced by the U.S. Supreme Court”); American Policy Holders Ins. Co. v. Nyacol Products, Inc., Civil No. 91-8667 (Super.Ct. Sept. 18, 1995) (McHugh, J.) (4 Mass. L. Rptr. 307) (declining to follow federal precedent where admitting reports would “as a practical matter do away with the rules against admission of ‘totem-pole’ hearsay whenever the public official relied on the hearsay for some judgment or conclusion”). Furthermore, the Massachusetts Appeals Court has held that, chiefly because of the Advisory Committee note to Proposed Rule 803(8), the Proposed Rule does not change Massachusetts law and thus continues “to exclude evaluative reports.” Rice at 706-07 n. 11 (excluding Department of Public Health regulations from the public documents exception because they were expressions of public policy rather than factual findings); see also Nyacol at 4 (Proposed Rule 803(8) excludes “heavily opinionated and judgmental” reports authored by the Environmental Protection Agency).